**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 5 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

OLIVER MEDLOCK, JR.,

     Plaintiff - Appellee,

v.

ORTHO BIOTECH, INC.,

     Defendant - Appellant,

 and

JOHNSON & JOHNSON
COMPANIES, ORTHO
PHARMACEUTICAL CORP.,
WILLIAM C. PEARSON, III, W.
THOMAS AMICK, JAMES A.
MORELAND, RICHARD W. ZAHN,
C. DANIEL SMITH, CRAIG
MANJEAN and CAROL WEBB,

     Defendants.

---

EQUAL EMPLOYMENT ADVISORY
COUNCIL,

     Amicus Curiae.

No. 97-3037

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 94-CV-2317)**

David J. Waxse (Barbara A. Harmon with him on the briefs) of Shook, Hardy & Bacon, L.L.P., Overland Park, Kansas, for the Defendant - Appellant.

Alan V. Johnson of Sloan, Listrom, Eisenbarth, Sloan & Glassman, L.L.C., Topeka, Kansas, for the Plaintiff - Appellee.

Robert E. Williams, Ann Elizabeth Reesman, and Jennifer Nicole Long of McGuiness & Williams, Washington, D.C., filed an amicus curiae brief for the Equal Employment Advisory Council.

---

Before **BRISCOE** , **McWILLIAMS**  and **LUCERO** , Circuit Judges.

---

**LUCERO** , Circuit Judge.

---

After a seven-day trial, a jury found that Ortho Biotech, Inc. ("OBI") had terminated Oliver Medlock, Jr. in retaliation for his filing and pursuing a claim of discrimination based on race in violation of Title VII.  The questions we must resolve on appeal are: (1) did Medlock present sufficient evidence to support the jury's finding of retaliatory discharge as well as its award of punitive damages; (2) did the district court err in administering a mixed motives instruction to the jury; (3) did the verdict form allow the jury to erroneously disregard after-acquired evidence on which OBI could have legitimately relied to terminate plaintiff; (4) did the district court abuse its discretion in refusing to instruct the jury that its determination of damages could consider plaintiff's conduct after his termination; (5) did the district court err in refusing to reduce the award for future

- 2 -

loss of compensation under 42 U.S.C. § 1981a(b)(3); and, finally, (6) did the district court err in awarding plaintiff attorney fees?  We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

## I

Plaintiff began working for OBI in June 1989.  In 1991, shortly after a meeting at which plaintiff learned that a scheduled salary increase was going to be postponed for six months, plaintiff called his division manager, C. Daniel Smith, and irately expressed his dissatisfaction with various aspects of his job, including his level of pay.  Smith submitted a memo concerning the conversation to his superior, William Pearson, III, describing plaintiff as "very angry and hostile about the way that he has and is being managed with Ortho Biotech."  II Appellant's App. at 334-35.

In February 1992, plaintiff confronted Pearson after a sales meeting. During that discussion, Medlock accused Pearson of building a file of inaccurate information about him and threatened to harm him physically if he continued to do so.  Later that month, Pearson met with his superiors to discuss his confrontation with plaintiff.  Although Pearson recommended that plaintiff be terminated for violating company rules, OBI management decided to investigate the matter further and no action was taken at that time.

The next month, plaintiff contacted Smith again. According to Smith, plaintiff barraged him with obscenities. Smith used his dictation equipment to record the conversation. He later played the tape for Pearson, and then sent Pearson a memorandum stating that Medlock "is becoming more difficult to manage because of his BAD attitude and his dislike for Ortho Biotech and our policies. I feel that Oliver should be put on formal warning or terminated as soon as possible." II Appellant's App. at 403.

That same day, Pearson submitted a memorandum to upper management describing the continuing difficulty he was having with plaintiff and recommending they take "immediate action to resolve this situation." Id. at 402. Shortly thereafter, plaintiff met with representatives of OBI's upper management. They discussed plaintiff's job performance and his altercation with Pearson in February of that year. Although Medlock's version of that story did not vary greatly from Pearson's, management decided to give him another chance.

Plaintiff continued to express his dissatisfaction with his compensation, and ultimately filed administrative charges with the Equal Employment Opportunity Commission in December 1993. Among other claims, plaintiff alleged that his compensation was the product of racial discrimination. In August 1994, plaintiff filed suit in district court claiming racial discrimination along with numerous other causes of action. One month after his deposition in that suit was taken,

plaintiff was suspended by OBI and, a month after that, he was terminated. He subsequently added to his complaint a claim for retaliatory discharge in violation of Title VII.

Defendant prevailed on all claims except one—the jury found that OBI terminated plaintiff in retaliation for his filing and pursuing his race discrimination claim under Title VII. Though OBI contends that it had legitimate nondiscriminatory reasons for terminating plaintiff in the light of new information it learned during plaintiff's deposition, the jury nevertheless found by a preponderance that plaintiff was terminated for reasons of retaliation.

## II

After trial, defendant moved for judgment as a matter of law ("JMOL") on the ground that plaintiff had not adduced sufficient evidence to support a finding of retaliatory discharge in violation of Title VII. We review the district court's denial of that motion de novo. See Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1450 (10th Cir. 1997). In determining whether the district court's refusal to grant JMOL constitutes error, "[w]e do not weigh the evidence, pass on the credibility of the witnesses, or substitute our conclusions for that of the jury." Id. (internal quotation omitted). Rather, we may only reverse "if the evidence points

but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Id.[1]

## A

Under 42 U.S.C. § 2000e-3(a), it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice" by Title VII. To prevail on a retaliatory discharge claim, a plaintiff must establish that the decision to terminate her resulted from retaliatory animus. A plaintiff may meet that burden in two ways. Typically, a plaintiff will rely on the familiar framework enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), under which the plaintiff bears the initial burden of establishing a prima facie case of discrimination. If the defendant is able to articulate a legitimate nondiscriminatory reason for the adverse action, the plaintiff must then show that the articulated reasons are a pretext for retaliation. However, the plaintiff may also establish discrimination

---

[1] Defendant also asserts that it was error for the district court to deny its motion for summary judgment prior to trial. This argument is without merit. Even if we agreed with defendant that summary judgment was erroneously denied, "'the proper redress would not be through appeal of that denial but through subsequent motions for judgment as a matter of law . . . and appellate review of those motions if they were denied.'" Roberts v. Roadway Express, Inc., Nos. 96-1554 & 97-1093, 1998 WL 352629, at *1 (10th Cir. July 2, 1998) (quoting Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1251 (10th Cir. 1992)).

directly, in which case the McDonnell Douglas framework is inapplicable. See Greene v. Safeway Stores, Inc., 98 F.3d 554, 557-58, 560 (10th Cir. 1996).

To prevail via this direct method, a plaintiff must introduce direct or circumstantial evidence that the alleged retaliatory motive "actually relate[s] to the question of discrimination in the particular employment decision, not to the mere existence of other, potentially unrelated, forms of discrimination in the workplace." Thomas v. National Football League Players Ass'n, 131 F.3d 198, 204 (D.C. Cir. 1997) (" NFLPA "); see also Thomas v. Denny's, Inc., 111 F.3d 1506, 1512 (10th Cir. 1997) (holding that plaintiff may prove discriminatory motive by "presenting 'evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged [retaliatory] attitude'" (quoting Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1471 n.5 (10th Cir. 1992)) (emphasis added)); Greene, 98 F.3d at 560 (holding that plaintiff may establish age discrimination "directly, by presenting direct or circumstantial evidence that age was a determining factor in his discharge"). Defendant argues that "[n]o evidence was presented at trial that plaintiff's filing and pursuit of his discrimination charge was a 'motivating factor' in the decision to terminate him." Appellant's Br. at 22. We disagree.

One month after plaintiff's deposition, during which he testified about his race discrimination claim, defendant sent a letter to plaintiff, stating: "As a result

- 7 -

of issues raised in your deposition, effective immediately, you are suspended from all duties on behalf of the Company." Appellant's Add. App. at 3011. In a letter explaining the reasons for plaintiff's termination shortly thereafter, defendant states: "During the entire term of your employment, you have communicated your deep dissatisfaction with your compensation to Ortho Biotech management and Ortho Biotech human resources personnel." Id. at 3012. On its face, defendant's suspension letter admits that defendant considered the subject matter of plaintiff's deposition in its decision to terminate him, a deposition which included testimony about his Title VII race discrimination claim. The termination letter explicitly references plaintiff's communication of his dissatisfaction with his compensation. Taken in the light most favorable to plaintiff, we must conclude the letters, coupled with the close temporal proximity between plaintiff's deposition and firing, directly support the jury's finding that defendant terminated plaintiff in retaliation for his pursuit of his Title VII race discrimination claim.

Defendant argues that, notwithstanding the language in its letters to Medlock, it is entitled to JMOL because no reasonable jury could reject the nondiscriminatory reasons on which it purportedly relied to terminate plaintiff. According to defendant, it only decided to discharge plaintiff after learning during his deposition and the discovery process that: (1) he had secretly taped numerous private telephone conversations with co-workers; (2) he had thoughts

about doing serious bodily harm to his supervisors; (3) he frequently used vulgarities and was prone to excessive anger; (4) he had made disparaging remarks about the company to customers; and (5) he had disclosed confidential information to OBI's competitors. The jury rejected these arguments, finding that defendant would not have terminated plaintiff in the absence of retaliatory animus. [2]

Once plaintiff presented evidence that retaliation played a motivating part in defendant's decision to discharge him, it became defendant's burden to prove by a preponderance that it " would have made the same decision" notwithstanding its retaliatory motive. Denny's , 111 F.3d at 1511 (quoting Price Waterhouse v. Hopkins , 490 U.S. 228, 244-45 (1989), overruled in part by 42 U.S.C. §§ 2000e-2(m), 2000e-5(g)(2)(B) (providing broader remedies for plaintiff who demonstrates unlawful criterion was "motivating factor" in adverse employment decision)). [3] If the defense does not carry that burden, the plaintiff will prevail.

_____

[2] Though defendant challenges the meaning of this provision of the special verdict, we conclude that the jury's verdict is properly understood as a finding that defendant would not have terminated plaintiff in the absence of retaliatory motive. See infra part III.B.

[3] Because the statutory overruling of Price Waterhouse does not alter the respective burdens of plaintiff and defendant in a mixed motive case, but only changes the remedies available when both parties meet their burden, see infra part III & n.5, our analysis of those burdens is unchanged by the 1991 amendments.

See NFLPA, 131 F.3d at 203 (citing Price Waterhouse, 490 U.S. at 276 (O'Connor, J., concurring)).

It is true that defendant presented numerous grounds at trial upon which it claims it would have terminated plaintiff's employment. However, the jury was fully entitled not to find this evidence credible. Given our conclusion that the suspension and termination letters in conjunction with the timing of plaintiff's suspension and ultimate discharge constitute direct evidence of retaliatory animus, disbelief of defendant's proffered justifications is not unreasonable. See Conner v. Schnuck Mkts., Inc., 121 F.3d 1390, 1396 n.5 (10th Cir. 1997) (noting that direct evidence may go to prove that employer's reasons are pretextual and therefore unworthy of belief); accord Penk v. Oregon State Bd. of Higher Educ., 816 F.2d 458, 462 (9th Cir. 1987); see also 1 Lex K. Larson, Employment Discrimination § 8.07, at 8-109 (2d ed. 1998) (noting that plaintiffs proceeding under McDonnell Douglas framework may use direct evidence to show pretext). Were we the triers of fact, we might have evaluated the evidence differently. In reviewing a denial of JMOL, however, it is well established that "[t]he jury . . . has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." Thunder Basin Coal Co. v. Southwestern Pub. Serv. Co., 104 F.3d 1205, 1212 (10th Cir.

- 10 -

1997) (internal quotations omitted).  Consequently, we conclude there is sufficient evidence to support the jury's verdict.

**B**

Defendant also contends that the evidence was insufficient to support the jury's finding of punitive damages.  Although a jury is never required to award punitive damages,   see Smith v. Wade , 461 U.S. 30, 52 (1983), a plaintiff may receive such an award if it demonstrates that defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to [her] federally protected rights."  42 U.S.C. § 1981a(b)(1).  The purpose of punitive damages is "to punish what has occurred and to deter its repetition."   Pacific Mut. Life Ins. Co. v. Haslip    , 499 U.S. 1, 21 (1991).

This court has not had occasion to determine comprehensively what burden a plaintiff must carry to prove "malice or reckless indifference to . . . federally protected rights" within the meaning of § 1981a(b)(1).  This case, however, does not require our eliciting that standard in any analytic detail.  Plaintiff has produced evidence sufficient to prove retaliation.  He has also adduced evidence that in the very letter effecting his retaliatory discharge, his employer expressly acknowledged plaintiff's "protected legal rights to pursue a lawsuit against the Company without retaliation."  Appellant's Add. App. at 3013.  We have no doubt

that the jury was well within the bounds of reason in determining such conduct to manifest reckless indifference to plaintiff's federally protected rights.

### III

OBI argues that we must reverse because the district court erred in instructing the jury. It claims three specific errors: (1) the jury should have been given a McDonnell Douglas as opposed to a mixed motive instruction; (2) the verdict form improperly required the jury to hold against defendant for discharging plaintiff based on information it learned during discovery; and (3) the district court failed to instruct the jury that defendant's damages could be limited based on events that took place after his termination. We review the district court's decision to give a particular instruction for abuse of discretion. See Denny's, 111 F.3d at 1509. To determine whether the jury was adequately instructed on the applicable law, we review the instructions in their entirety de novo to determine whether the jury was misled in any way. See Coleman v. B-G Maintenance Mgmt. of Colo., Inc., 108 F.3d 1199, 1202 (10th Cir. 1997). The instructions as a whole need not be flawless, but we must be satisfied that, upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them. See Brodie v. General Chem. Corp., 112 F.3d 440, 442 (10th Cir. 1997).

**A**

Defendant contends that the district court erred by giving the jury a "motivating factor," or "mixed motive," instruction on plaintiff's Title VII retaliation claim. Defendant assert that the court should instead have required Medlock to show pretext under the familiar McDonnell Douglas framework. See 411 U.S. at 802-05. Its argument is two-fold. First, it argues that 42 U.S.C. § 2000e-2(m), which was added to Title VII pursuant to the Civil Rights Act of 1991 and which codifies the motivating factor standard, does not apply to retaliation cases. Therefore no mixed motivation instruction should have been given unless the case met the standard for such instructions enunciated in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Second, it claims that under the Price Waterhouse standard it was not appropriate to instruct the jury on mixed motives in this case.

Section 107(a) of the Civil Rights Act of 1991, now codified at 42 U.S.C. § 2000e-2(m), overruled the Supreme Court's decision in Price Waterhouse to the extent that that decision holds an employer can avoid a finding of liability by proving it would have taken the same action even absent the unlawful motive. Compare 42 U.S.C. § 2000e-2(m) (providing that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment

- 13 -

practice, even though other factors also motivated the practice")        with Price

Waterhouse , 490 U.S. at 258 (holding defendant may avoid finding of liability by

proving that it would have made the same decision even in the absence of

unlawful motive).  Thus, the Civil Rights Act of 1991 does not create the mixed

motive standard.  Instead, the Act expands the relief available to a plaintiff who

demonstrates that an unlawful criterion played a motivating part in an

employment decision, even though the employer shows that it would have made

the same decision regardless.     See 42 U.S.C. § 2000e-5(g)(2)(B).  Furthermore,

the Act does not address what type of evidence is required to meet this standard

and so warrant a mixed motive instruction.  Consequently, we agree with

defendant that  Price Waterhouse   continues to control when a mixed motive

instruction is appropriate.   [4]  See Fuller v. Phipps  , 67 F.3d 1137, 1142 (4th Cir.

1995).

---

[4]  Defendant claims that, by its plain language, 42 U.S.C. § 2000e-2(m)
does not apply to retaliation cases.      See McNutt v. Board of Trustees of the Univ.
of Ill. , 141 F.3d 706, 709 (7th Cir. 1998);     Woodson v. Scott Paper Co.   , 109 F.3d
913, 933-35 (3d Cir. 1997);    Tanca v. Nordberg  , 98 F.3d 680, 685 (1st Cir. 1996).
But see  2 Larson, Employment Discrimination § 35.04[1], at 35-25 (noting that
the EEOC interprets this section to apply to retaliation claims).  Because we
conclude that  Price Waterhouse   and its progeny control our analysis of whether it
is appropriate to give a mixed motive instruction in any given case, we need not
resolve this issue.  We would, of course, be obliged to reach the issue had the jury
concluded defendant would have terminated Medlock even in the absence of a
retaliatory motive.  But the jury specifically found otherwise.      See infra note 5.

- 14 -

Once a plaintiff proves that retaliation played a motivating part in an employment decision, the burden shifts to defendant to demonstrate by a preponderance of the evidence that it would have made the same decision even if it had not taken the retaliatory motive into account. See Price Waterhouse, 490 U.S. at 250 (plurality opinion); Kenworthy, 979 F.2d at 1470-71; accord 42 U.S.C. § 2000e-5(g)(2)(B). A mixed motive instruction is therefore appropriate in any case "'where the evidence is sufficient to allow a trier to find both forbidden and permissible motives.'" Denny's, 111 F.3d at 1512 (quoting Ostrowski v. Atlantic Mut. Ins. Cos., 968 F.2d 171, 181 (2d Cir. 1992)). Because we have already concluded that the suspension and termination letters along with the timing of plaintiff's discharge directly reflect defendant's retaliatory animus, we must also conclude that the jury could reasonably have found both "forbidden and permissible motives" for defendant's decision. Id. We therefore conclude that the district court did not abuse its discretion by instructing the jury on mixed motive.

**B**

Defendant next argues that, even if it was appropriate to instruct the jury on mixed motive, the verdict form misled the jury by effectively instructing that defendant could not rely on information it obtained during the discovery process to discharge plaintiff. The verdict form stated that if the jury found OBI

terminated plaintiff's employment in retaliation for his filing and pursuing charges of race discrimination, it was also required to determine whether OBI would have discharged plaintiff "even in the absence of his filing and pursuing charges of race discrimination." III Appellant's App. at 800. Defendant suggests that the jury could not help but answer that question in the negative because the company's asserted justifications for discharging plaintiff were all learned during the discovery process.

"No party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51. Because the purpose of the objection is to give the court an opportunity to correct any mistake before the jury enters deliberations, see, e.g. , Transnational Corp. v. Rodio & Ursillo, Ltd. , 920 F.2d 1066, 1069 (1st Cir. 1990), an excessively vague or general objection to the propriety of a given instruction is insufficient to preserve the issue for appeal. Here, although defendant objected generally to the propriety of giving a mixed motive instruction, see IX Appellant's App. at 2734, it did not object to the language in the verdict form that it now claims is misleading. Our review of the disputed verdict form is therefore limited to whether it was "patently plainly erroneous and prejudicial." Zimmerman v. First Fed. Sav. & Loan Ass'n , 848 F.2d 1047, 1054

- 16 -

(10th Cir. 1988) (internal quotation omitted).  Only rarely will we reverse based on allegedly erroneous instructions to which there was no objection at trial; the party claiming plain error has "the heavy burden of demonstrating fundamental injustice."  Id. (internal quotation omitted).

We discern no such error here.  Based on our review, the instructions conveyed the appropriate standard to the jury regarding plaintiff's burden to demonstrate that retaliatory animus was a "motivating factor" in OBI's decision to terminate him. [5]  If the jury found that plaintiff met his burden, the instructions correctly required defendant to show by a preponderance that it would have taken the same action "in the absence of the unlawful motive."  III Appellant's App. at

---

[5]  Again, we need not determine whether 42 U.S.C. § 2000e-2(m) applies because the "motivating factor" standard also applies under Price Waterhouse. See 490 U.S. at 250 (plurality opinion); id. at 274 (O'Connor, J., concurring). Both the 1991 amendments to Title VII and Price Waterhouse shift the burden to the employer to prove it would have taken the same action even in the absence of the unlawful motive. Compare 42 U.S.C. § 2000e-5(g)(2)(B) with Price Waterhouse, 490 U.S. at 258 (plurality opinion). The only difference between the Price Waterhouse standard and § 2000e-2(m) is the legal consequence of a finding that the employer would have taken the same action even in the absence of the unlawful motive. Under Price Waterhouse, the defendant avoids a finding of liability altogether. See 490 U.S. at 258 (plurality opinion); id. at 261 (O'Connor, J., concurring). Under the 1991 amendments, defendant is still liable but plaintiff is limited in what forms of relief she may receive. See 42 U.S.C. § 2000e-5(g)(2)(B). This difference is of no consequence in the present case because the jury found that defendant had not shown it would have discharged plaintiff absent retaliatory motive. Thus, we need not decide whether the jury should have been instructed that such a showing would absolve defendant of liability or would only limit the relief to which plaintiff was entitled.

761. In addition, the instructions clearly state that should the jury find defendant had made such a showing, it should mark the verdict form accordingly. See id.[6] In contrast, the verdict form first asks whether the jury found that OBI fired plaintiff in retaliation for his "filing and pursuing charges of race discrimination." Id. at 799. Because the jury answered that question affirmatively, it was also required to determine whether OBI would have made the same decision even in the absence of the retaliatory motive. Rather than using the term "retaliatory motive," however, the verdict form simply parallels its own language in the question regarding liability—i.e., whether defendant would have taken the same action even in the absence of plaintiff's "filing and pursuing charges of race discrimination." Id. at 800.

Defendant is correct that it may rely on information obtained during the discovery process in making employment decisions so long as it does not do so as a pretext for discrimination or retaliation. See Hetreed v. Allstate Ins. Co., 135 F.3d 1155, 1157-58 (7th Cir. 1998); cf. McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 362 (1995) (holding that information obtained during discovery about employee misconduct that would have justified termination had it been known at the time may limit remedies available to plaintiff). The verdict

_____

[6] Defendant concedes that the mixed motive instruction to the jury correctly set forth defendant's obligation to show it would have taken the same action in the absence of the unlawful motive. See Appellant's Br. at 42.

- 18 -

form, however, does not plainly state the contrary. Read as a whole and in conjunction with the instructions on retaliatory discharge, the verdict form may readily be understood to require the jury to determine whether OBI would have made the same decision in the absence of a retaliatory motive, which is the correct standard for a mixed motive case. See Denny's , 111 F.3d at 1511-12; 42 U.S.C. § 2000e-5(g)(2)(B). Because we cannot conclude that the verdict form was interpreted in the manner defendants suggest, we cannot hold it "patently plainly erroneous."

## C

Defendant claims the district court erred in refusing to instruct that plaintiff's conduct after he had been terminated could serve to limit damages if defendant showed that the conduct "was of such severity that the Plaintiff in fact would have been terminated on those grounds alone." See Appellant's Br. at 44 (quoting III Appellant's App. at 735). In support of this argument, defendant points to the McKennon decision. See 513 U.S. at 362 (holding that evidence of employee misconduct occurring during tenure with employer but not discovered until after termination may be used to limit relief if employer can demonstrate that prior conduct was so severe that it would have discharged employee on those grounds alone). Defendant asserts that the logic of McKennon extends to conduct of an employee after he has been discharged. We review the district court's

refusal to give an instruction on after-occurring evidence for abuse of discretion. See Denny's, 111 F.3d at 1509.

Under McKennon, information that an employer learns after it has discharged an employee is not relevant to the determination of whether an employer violated Title VII because it necessarily played no role in the actual decision. See 513 U.S. at 358-60. Nevertheless, if an employer learns of employee wrongdoing after it has fired that employee, and it can prove that the "wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge," the employee may not obtain front pay or reinstatement and may also be denied backpay to which she would otherwise be entitled. Id. at 361-62. According to the Court, it would not comport with the "employer's legitimate concerns" to ignore evidence of misconduct on the part of the employee. See id. at 361.

Although McKennon states as a general rule that front pay and reinstatement are not appropriate remedies where there is after-acquired evidence of pre-termination wrongdoing, the Court was careful to state that "[t]he proper boundaries of remedial relief in the general class of cases where, after termination, it is discovered that the employee has engaged in wrongdoing must be addressed by the judicial system in the ordinary course of further decisions, for

- 20 -

the factual permutations and the equitable considerations they raise will vary from case to case." Id.; see also id. at 362 ("In determining the appropriate order for relief, the court can consider taking into further account extraordinary equitable circumstances that affect the legitimate interests of either party.").

Defendant argues that it would have terminated plaintiff on the basis of his post-termination conduct at his unemployment compensation benefits hearing, during which he "touched and cursed at Defendant's counsel." Appellant's Br. at 43. Although we do not foreclose the possibility that in appropriate circumstances the logic of McKennon may permit certain limitations on relief based on post-termination conduct, see Christine Neylon O'Brien, The Law of After-Acquired Evidence in Employment Discrimination Cases: Clarification of the Employer's Burden, Remedial Guidance, and the Enigma of Post-Termination Misconduct, 65 UMKC L. Rev. 159, 174 (1996) (concluding that egregious post-termination misconduct should ordinarily bar reinstatement and curtail backpay), we cannot conclude that the district court abused its discretion in refusing to adopt defendant's proffered instruction. The alleged misconduct to which defendant points occurred at a hearing occasioned by plaintiff's termination. In this case, as in most cases in which the alleged misconduct arises as a direct result of retaliatory termination, the necessary balancing of the equities hardly mandates

a <u>McKennon</u>-type instruction on after-occurring evidence. [7] Consequently, the failure to give such an instruction is not reversible error.

## IV

Under 42 U.S.C. § 1981a, "[t]he sum of the amount of compensatory damages awarded . . . for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded . . . shall not exceed" $200,000 against a defendant, like OBI, who has more than 200 and fewer than 501 employees. <u>See</u> 42 U.S.C. § 1981a(b)(3)(C). Defendant claims that plaintiff's damages award, which included $100,000 in compensatory damages, $185,132 in front pay, $75,000 for mental anguish, emotional pain, loss of enjoyment of life, and inconvenience, and $100,000 in punitive damages, exceeds the applicable cap. [8] Plaintiff responds that, because front pay is not appropriately

---

[7] It is not difficult to envision a defendant goading a former employee into losing her temper, only to claim later that certain forms of relief should be unavailable because it would have discharged the plaintiff based on her inability to control her temper.

[8] The verdict form required the jury to determine Medlock's entitlement to "[f]uture damages." <u>See</u> III Appellant's App. at 799. Appellee contends that the $185,153.62 awarded on this basis constitutes "front pay." Appellee's Br. at 39. The record supports this contention. "Front pay refers to the award of money as compensation for the future loss of earnings." <u>James v. Sears, Roebuck & Co.</u>, 21 F.3d 989, 997 (10th Cir. 1994). The court instructed the jury that it could award "future damages for the wages and benefits that he would have earned during the period from the date of your verdict until the date when plaintiff would have

(continued...)

- 22 -

considered under § 1981a, the district court committed no error in refusing to reduce his damage award to $200,000. Whether "future pecuniary losses" includes an award of front pay is an issue of law that we review de novo.   See Southern Ute Indian Tribe v. Amoco Prod. Co., 119 F.3d 816, 820 (10th Cir. 1997).

At least one court has made this determination by looking to the "ordinary, contemporary, common meaning" of the phrase "future pecuniary losses," then construing this meaning to be broad enough to cover front pay.   See Hudson v. Reno, 130 F.3d 1193, 1203-04 (6th Cir. 1997) (citation omitted).  This approach, however, fails to understand the relevant statutory terms "in light of the language and structure of the Act as a whole."   Dole v. United Steelworkers of America, 494 U.S. 26, 41 (1990).

Under § 1981a(b)(2), Congress expressly excludes certain forms of relief from the "compensatory damages" cap listed in 42 U.S.C. § 1981a(b)(3)(C). These exclusions include "backpay, interest on backpay, or any other type of

---

[8] (...continued)
voluntarily resigned from Ortho Biotech, Inc., or obtained other employment," III Appellant's App. at 768, and that its calculation must be based on "the total amount of any anticipated future loss of compensation," discounted to present value over "the number of years over which the future loss is reasonably certain to be sustained," id. at 769.  No other "future damages" instruction was provided. Under these circumstances, we are satisfied that the verdict form's reference to "future damages" signifies front pay only.

relief authorized under section 706(g) of the Civil Rights Act of 1964 [42 U.S.C. § 2000e-5(g)]." An award of front pay fits squarely within this list of exclusions because it constitutes "other equitable relief" that "the court may grant if deemed appropriate" pursuant to 42 U.S.C. § 2000e-5(g). [9] EEOC v. General Lines, Inc., 865 F.2d 1555, 1561 (10th Cir. 1989); see also 5 Larson, Employment Discrimination § 93.03, at 93-11 ("[T]he sweeping exemption for 'any other type of relief authorized under section 706(g)' of Title VII will likely compel the courts to exclude traditional front pay" from the definition of "future pecuniary loss"). Thus, even though "future pecuniary losses" could be understood to include front pay, the statute makes clear that the term is not to be understood in that fashion—or at least not for the purposes of determining the amounts subject to the § 1981a(b)(3)(C) compensatory damages cap. Consequently, the district court committed no error in refusing to reduce plaintiff's damages.

**V**

------

[9] This circuit allows an equitable award of front pay in lieu of reinstatement even when the plaintiff does not seek reinstatement in the pleadings in order "to achieve the broad purpose of eliminating the efforts of discriminatory practices and restoring the plaintiff to the position that she would have likely enjoyed had it not been for the discrimination." Fitzgerald v. Sirloin Stockade, Inc., 624 F.2d 945, 957 (10th Cir. 1980).

Finally, because we affirm the judgment of the district court, defendant's claim that plaintiff is no longer entitled to attorney fees as a prevailing party is necessarily without merit.

**AFFIRMED.**