**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JULY 18 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

TENA J. WICKMAN,

      Plaintiff-Appellee,

v.

WILLIAM J. HENDERSON, in his
official capacity as Postmaster General
of the United States Postal Service,

      Defendant-Appellant.

No. 00-6246
(D.C. No. 98-CV-301-A)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL**, **PORFILIO,** and **KELLY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant William J. Henderson, in his official capacity as Postmaster General of the United States Postal Service, appeals from the district court's denial of a Fed. R. Civ. P. 50(b) motion, for judgment as a matter of law (JMOL)[1] in this case brought pursuant to Title VII. We reverse and remand for a new trial on damages only.

Plaintiff began her employment as a mail carrier with defendant in 1992. In 1997, she was terminated for dishonest conduct. She worked at several post office stations during her career, but upon being assigned to the Bethany Station, she began filing union grievances and EEOC complaints against her supervisors. She was terminated while working at the Farley Station.

Plaintiff's complaint contains seventeen claims based on sex discrimination and retaliation. The district court granted summary judgment for defendant on thirteen of the claims. At the close of plaintiff's case, the court granted JMOL for defendant on two more of her claims. The jury found for plaintiff on the remaining claims and awarded one million dollars in compensatory damages. Applying the damage cap under 42 U.S.C. § 1981a(b)(3)(D), the court entered judgment for $300,000.00 along with reinstatement, back pay, and attorney's fees.

---

[1] Plaintiff prevailed on retaliation and gender discrimination claims arising from actions occurring at the Bethany, Oklahoma postal station and a retaliatory discharge claim following her termination at the Farley, Oklahoma postal station. Defendant moved for JMOL only on the retaliatory discharge claim. Therefore, the jury's verdict on her retaliation and gender discrimination claims stands.

On appeal, defendant argues that the district court should not have denied judgment as a matter of law on her retaliation claim because plaintiff presented insufficient evidence to prove a nexus between her prior protected activity and her termination. Defendant further contends a new trial must be ordered on the issue of damages should we agree that plaintiff failed to meet her burden on the termination claim.

The acts of discrimination plaintiff complained of at the Bethany Station occurred two and one half years before her termination from the Farley Station. To establish a claim for termination based on retaliation, plaintiff had to link the events at the Bethany Station with her termination at the Farley Station. Plaintiff attempted to make this link through the alleged actions of two men, Don Moses and Gus Comeaux, neither of whom testified at the trial.

One month after plaintiff's termination, Mr. Moses , the district manager of both stations , gave a talk to carriers in the Shartel Station suggesting "we're going to take care of all these people that file EEOs and these grievances." App., Vol. I at 96, 97. Plaintiff posited that Mr. Moses had communicated this sentiment to her immediate supervisor, Mr. Hall and his immediate supervisor, Ms. Smith, prior to her termination. Plaintiff concluded that Hall and Smith then terminated her in accordance with Mr. Moses' intention.

Plaintiff also suggested that Gus Comeaux, who was the acting postmaster at Bethany when she worked there and was Smith and Hall's supervisor at Farley, communicated her history of filing EEOC complaints and union grievances to them. She alleged they decided to terminate her in retaliation for her actions at Bethany.

Defendant countered plaintiff was terminated for just cause because she had engaged in dishonest conduct. In May 1997, a regular postal route inspection had been scheduled at Farley. During such a route inspection "every piece of mail is . . . counted that comes into a station." Id., Vol., III at 546. Routes are then adjusted based on the amount of mail and the time required to deliver it so that mail on each route can be distributed within an eight-hour time period. Id.

Plaintiff testified that some of the carriers told her they had heard a rumor that management was going to "curtail" or hold back some of her mail during the inspection which would permit them to adjust her route by adding to it on Saturdays when some of the businesses on her route were closed. To compensate for the expected curtailment, plaintiff admitted she prepared 165 postcards to her customers and placed them in her delivery load on the inspection Saturday without having them canceled or processed through the regular mail. Mr. Hall

confiscated the postcards and notified Ms. Smith and the Postal Inspection Service.

Following the investigative report, Mr. Hall proposed and Ms. Smith concurred that plaintiff should be terminated for dishonest conduct. Plaintiff filed both a union grievance and an EEOC complaint. Her union grievance was rejected on the basis that her discharge was for just cause. She received a right to sue letter from the EEOC.

Plaintiff contends other carriers committed the same act without being terminated. She admitted, however, Hall and Smith did not know of her EEO activities while she was at Bethany. Nevertheless, she testified that, before her pre-disciplinary interview, she saw Mr. Comeaux coming out of Ms. Smith's office. She believed their attitudes at the pre-disciplinary interview appeared changed from friendly and open to hostile. She attributed the change to Mr. Comeaux, assuming he had told them of her activities at Bethany.

Hall and Smith both testified they were unaware that plaintiff had participated in EEO activities and that they had talked to neither Mr. Comeaux nor Mr. Moses about her. They also testified that their decision to terminate plaintiff was based only on the Postal Investigation report and her dishonest conduct.

The district court denied defendant's motion for JMOL stating the jury did not have to believe Hall and Smith. It concluded, as the case was based on circumstantial evidence, the jury could decide that Hall and Smith had knowledge of her prior EEO activities and union grievances. Further, a reasonable jury could conclude that, because she was terminated the first time she committed any misconduct at the Farley Station, the termination was in retaliation for those prior activities. The court also noted the change of attitude between plaintiff's first and second meetings with her supervisors and stated that there was more "than just speculation that Mr. Comeaux put the bug in the ear." Id., Vol. III at 609. The court held that Mr. Moses' statement, even though made after plaintiff's termination, could reasonably be viewed as direct evidence of a contemporaneous management policy or practice of retaliatory discharge.

The district court may grant a JMOL motion "if, after a party has been fully heard on an issue, there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue." Phillips v. Hillcrest Med. Ctr., 244 F.3d 790, 796 (10th Cir. 2001). We review the district court's denial of a Rule 50(b) motion de novo. Tyler v. RE/MAX Mountain States, Inc., 232 F.3d 808, 812 (10th Cir. 2000). In reviewing the record evidence, we construe it in the light most favorable to the nonmoving party. Id. JMOL is only appropriate "if the

-6-

evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." Id. (quotation omitted).

"[T]he jury . . . has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 551 (10th Cir. 1999) (quotation omitted). However, "[a]lthough a jury is entitled to draw reasonable inferences from circumstantial evidence, reasonable inferences themselves must be more than speculation and conjecture." Sunward Corp. v. Dun & Bradstreet, Inc., 811 F.2d 511, 521 (10th Cir. 1987).

> The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncracies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical *fact*, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the *proven facts* . . . . [T]he essential requirement is that mere speculation be not allowed to do duty for probative facts after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.

Id. (quotations omitted) (emphases added).

Here, plaintiff put no *facts* into evidence. The jury's determination "could only have been based on speculation and conjecture, an impermissible ground upon which to base its verdict." Bankers Trust Co. v. Lee Keeling & Assocs.,

-7-

Inc., 20 F.3d 1092, 1101 (10th Cir. 1994).  "[T]he jury was left to rely[] more on speculation than evidence and reasonable inference.  Each inference argued . . . was not only speculative in itself, but it rested upon predicate speculation, thus compounding the error."  Sunward Corp., 811 F.2d at 519.

Plaintiff admitted she had no actual knowledge that Hall and Smith knew of her Bethany Station activities.  App., Vol. II at 413.  Moreover, her belief that Mr. Comeaux, who would have known of her EEO activities and union grievances at the Bethany Station, communicated that knowledge to Hall and Smith is the rankest speculation.  Upon that speculation, she asked the jury to infer that, having this knowledge, Hall and Smith decided to terminate her because of her EEO activities.  Plaintiff did not present any evidence beyond surmise that Hall and Smith decided to terminate her because of her protected activity conducted several years previously and at a different postal station.  Cf. Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 876 (6th Cir. 2001) (plaintiff must "offer evidence that the supervisor's [wrongful] animus was the cause of the termination or somehow influenced the ultimate decisionmaker");  see also  Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990) (noting that if the committee which fired the employee had "acted as the conduit of [the manager's] prejudice--his cat's paw[,]" their innocence would not relieve the company of liability, but if the committee " made an independent decision to fire" the employee, the company

could not be held liable).  Here, there was no evidence Mr. Comeaux tainted Hall and Smith's decision by any prejudice against plaintiff or that he attempted to influence their decision in any way.

The case against Mr. Moses requires the same analysis.  Plaintiff presented no evidence his statement reflected the policy of the postal service or that he had communicated his position to Hall and Smith.  The fact that Moses was the district manager does not lead ineluctably to the conclusion he promoted illegal conduct to them and they acted upon it.  "[A]ctions and comments by employees not involved in a discharge decision cannot provide a basis for charging other employees with discrimination."  Fortino v. Quasar Co., a Div. of Matsushita Elec. Corp. of Am. , 950 F.2d 389, 395 (7th Cir. 1991) (quotation omitted).

The district court erred in not granting JMOL for defendant.  Plaintiff contends that even should we reverse the jury's verdict, we need not remand for a new trial on damages as she only presented evidence of damages relating to her claims involving the Bethany Station.  We disagree. The jury could very well have considered plaintiff's termination as part of the damages she suffered, along with her period of joblessness, and the fact that she had to learn a new career.  It would be speculation on our part to infer that the jury, which was not asked to apportion the damages, did not include consideration of these factors as part of

the damages she experienced.  We must remand this case to the district court for a retrial on damages based only on the claims on which plaintiff prevailed.

The order of the United States District Court for the Western District of Oklahoma denying defendant's motion for JMOL is REVERSED, the award of damages is VACATED, and the case is REMANDED for further proceedings in accordance with this order and judgment.

Entered for the Court

John C. Porfilio
Circuit Judge