FILED
United States Court of Appeals
Tenth Circuit

December 16, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

WILLIE E. BRANTLEY,

Plaintiff-Appellant,

v.

UNIFIED SCHOOL DISTRICT NO.
500, and KARLA STRICKLAND,

Defendants-Appellees.

No. 09-3207

(D. of Kan.)

(D.C. No. 2:08-CV-2059-EFM)

ORDER AND JUDGMENT[*]

Before **MURPHY**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

Willie E. Brantley appeals the district court's order granting summary

judgment on his employment discrimination claims against Unified School

District No. 500 (Unified). Brantley was employed as a substitute driver and

warehouse manager for Unified. He claims he was targeted for a demotion

because he raised concerns about the way his supervisor treated him because of

his gender.

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

The district court found no disputed issues of material fact and granted summary judgment in favor of the school district on all claims. Having jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

## I. Background

Brantley's claims of discrimination span events over several years. While working as substitute driver for Unified's food services, Brantley interviewed with Karla Strickland, Unified's director of nutritional services, for a food warehouse management position. He started that job in April 2004. Brantley claims that over the next couple of years, Strickland and another employee targeted him because of his gender. Brantley states in 2006 he complained about food quality to Brenda Houston, the central kitchen manager. He also says that in an April 2007 food services meeting, Strickland "displayed hatred" toward him because of his gender. Months after this meeting, Brantley did not contest discipline imposed on him by Strickland for making a crude, sexually explicit comment about a female employee.

Houston states that on August 7, 2007, she instructed Brantley to deliver and set-up two catering events while a new employee made a delivery only to a third event. Instead, Brantley took the new employee on his deliveries and set-ups, and when Houston called to check on them, she overheard Brantley tell the new employee she was setting him "up to fail." Strickland states on the following

day she overhead Brantley discussing the conversation before a group of men in the dish room, though Brantley denies the event.

On August 10, 2007, Brantley met with Strickland and Houston to discuss why Brantley ignored Houston's work instructions and his comment about her motivations. Strickland informed Brantley his actions were insubordinate and he should have followed the instructions and communicated better with Houston.

Over a week later,[1] at his request, Brantley met assistant superintendent Dr. Cynthia Lane to discuss the August 7 event, Houston's accusation he spoke inappropriately about her, and Strickland's claims about his criticism of Houston the following day. He also told Dr. Lane that Strickland treated him so poorly, the workplace had become "hostile." He claimed the other supervisors and employees treated him differently because he was male. On August 24, Dr. Lane discussed Brantley's concerns with Strickland, who, on August 27, provided Dr. Lane a written account of several previous incidents involving Brantley and expressed her opinion that none of them amounted to a hostile work environment.

On August 28, Strickland hand-delivered to Brantley a letter dated August 22, 2007. The letter summarized the August 10 meeting, noted Brantley's previous three-day suspension, and reminded Brantley he had previously received

---

[1] As the district court noted, the parties dispute the date of this meeting. Brantley claims it occurred on August 20, 2007, while Unified contends it occurred on August 22, 2007. Viewing the facts in the light most favorable to Brantley, as we must, we use the date of August 20, 2007.

warnings that another incident could result in further discipline. The letter then informed Brantley that Strickland had received approval from Human Resources to reassign Brantley to a new position, effective immediately. The reassignment was, in all important respects, a demotion because the new position paid a lower hourly wage and provided fewer working days per year.

Following these events, Brantley decided to appeal his reassignment using the district's employee grievance process. Unified uses a three-step procedure for employees to lodge complaints alleging any violations, misapplications, or misinterpretations of regulations. The first step is to raise the issue with the complainant's immediate supervisor. If that does not resolve the complaint, the complainant may then proceed to step two, which is to raise the issue with the superintendent or his or her designated representative. If step two does not resolve the issue, the complainant may then petition the School Board to hear the complaint. In addition to those procedures, Unified has adopted a set of written policies entitled "Administrative Guidelines." Guideline #4.1.12.0.0-A, entitled "Suspension, Non-Renewal, Termination," defines the term "just cause" and provides a list of situations or acts included in the term.

On September 13 Brantley sent a letter to Strickland asking her to reconsider the decision to reassign him. She responded in writing on September 19 that she stood by her decision. On October 1, Brantley then asked the superintendent for a hearing on his reassignment. The superintendent

-4-

responsible for the grievance notified Brantley the same day that his grievance hearing would be held on October 5, 2007 at 11:00 A.M. The superintendent selected Assistant Superintendent J.D. Rios as her representative.

Brantley claims he did not receive the notice, however, because he had forwarded his mail to a post office box and only checked the box twice a week. Brantley does not know whether he notified anyone at Unified that he had changed his mailing address. He picked up the letter on October 5, 2007 at 2:30 P.M. Realizing he had missed the meeting, Brantley tried to get Rios to reschedule. Rios explained he and the others at the meeting had waited for Brantley for 30 minutes, and he refused to reschedule. He then mailed Brantley a letter that explained, "Holding with past practice, when the complainant fails to show up the decision of management is upheld." Aplt. App. at 183.

Brantley did not ask the Board of Education to reconsider Rios's decision but instead filed a charge with the EEOC, which denied action on his claim.

Brantley then filed this Title VII action against Unified, claiming among other things that Unified retaliated against him for reporting sex discrimination and failed to give him adequate due process before demoting him.

The district court granted Unified summary judgment on all claims.

## II.  Discussion

Brantley avers the district court erred when it granted summary judgment to Unified on his retaliatory discharge and due process claims.  We do not agree.

### A.  Standard of Review

We review de novo a district court's decision to grant summary judgment, applying the same legal standard applied by the district court.  *Garret v. Hewlett-Packard Co.,* 305 F.3d 1210, 1216 (10th Cir. 2002).  Summary judgement is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Gullickson v. Southwest Airlines Pilots' Ass'n*, 87 F.3d 1176, 1183 (10th Cir. 1996).  We "must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.*  "In considering whether there exist genuine issues of material fact, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party." *Id.*

### B.  Title VII Retaliation

It is unlawful "for an employer" to retaliate against an employee who has "opposed any practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e-3(a).  To prevail on a Title VII retaliation claim, plaintiffs must

establish "that retaliation played a part in the employment decision." *Fye v. Okla. Corp. Comm.*, 516 F.3d 1217, 1224 (10th Cir. 2008).

Plaintiffs may choose one of two ways to meet this burden. They may rely on the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), "under which the plaintiff bears the initial burden of establishing a prima facie case of discrimination. If the defendant is [then] able to articulate a legitimate nondiscriminatory reason for the adverse action, the plaintiff must then show that the articulated reasons are a pretext for retaliation." *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 549–50 (10th Cir. 1999).

Plaintiffs may also choose, however, to show retaliatory animus directly, "in which case the *McDonnell Douglas* framework is inapplicable." *Id.* at 550 (citing *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557–58, 560 (10th Cir. 1996)). This direct method is often referred to as the "mixed-motive" theory.[2] To succeed, plaintiffs must first directly show "retaliation played a motivating part in the employment decision at issue. *Fye*, 516 F.3d at 1226. Once plaintiffs meet

---

[2] Unified argues that *Fye* suggests a mixed-motive analysis is not appropriate for retaliation claims after 42 U.S.C. § 2000e-2(m) superceded part of the Supreme Court case that established the mixed-motive framework. Unified is misreading *Fye*. *See Fye*, 516 F.3d at 1225 n. 5. We still apply the mixed-motive analysis in determining liability. *Id.* Section 2000e-2(m) "expands relief available to a plaintiff who demonstrates that an unlawful criterion played a motivating part in an employment decision." *Medlock*, 164 F.3d at 552. In *Medlock* and *Fye*, we refused to state definitively whether § 2000e-2(m) applies to Title VII retaliation cases, but both cases make clear the mixed-motive framework is still proper in determining liability.

that burden, "the burden of persuasion shifts to the defendant to prove that it would have taken the same action absent the retaliatory motive." *Fye*, 516 F.3d at 1225.

Although our cases state plaintiffs must "directly" show retaliatory animus in meeting their burden, the phrase does not refer to the type of evidence plaintiffs must use; indeed, they may rely on either direct or circumstantial evidence. *Id.* at 1226; *Medlock*, 164 F.3d at 550. The circumstantial evidence, however, must "be tied 'directly' to the retaliatory motive." *Fye*, 516 at 1226 (citing *Thomas v. Denny's Inc.*, 111 F.3d 1506, 1512 (10th Cir. 1997)). Further, plaintiffs' evidence must show the alleged retaliatory motive "'actually relate[s] to the question of discrimination in the particular employment decision, not to the mere existence of other, potentially unrelated, forms of discrimination in the workplace.'" *Medlock*, 164 F.3d at 550 (quoting *Thomas v. Nat'l Football League Players Ass'n*, 131 F.3d 198, 204 (D.C. Cir. 1997)); *see also Denny's*, 111 F.3d at 1512.

Plaintiffs "need not characterize [their cases] as . . . mixed-motive or pretext . . . from the outset" of the litigation, but the distinction "is crucial on appellate review." *Fye*, 516 F.3d at 1225. Thus, at some point during the district court proceedings, plaintiffs generally must choose which framework they will pursue. Because Brantley chose to proceed under the mixed-motive analysis, we review the district court's decision within that framework.

Brantley points to two pieces of evidence that show retaliatory motive: 1) Strickland's August 22, 2007 demotion letter, which Strickland did not deliver to Brantley until August 28; and 2) the temporal proximity of his demotion and his complaint to Dr. Lane about a hostile work environment.

The district court concluded Brantley failed to present sufficient evidence that an illegitimate retaliatory animus factored into Unified's decision to demote him. We agree.

### 1. *Strickland's Letter*

Brantley first alleges he met with Dr. Lane on August 20 to complain about gender disparities and a hostile workplace in the food services department. According to the record, Dr. Lane informed Strickland of those complaints on August 24, 2007. Strickland testified she gave Brantley his demotion letter (dated August 22) four days later, on August 28.

Given that time line, Brantley argues the August 22, 2007 date on his demotion letter proves Strickland lied about when she reached her decision to demote him. In support of this argument, he contends (1) Strickland did not mention she was contemplating a job transfer when she and Brantley met on August 10; and (2) Strickland similarly did not mention she was demoting Brantley at the August 24 meeting with Dr. Lane and in her August 27, 2007 memorandum detailing Brantley's disciplinary history. In other words, Brantley contends that if Strickland truly had begun drafting the transfer letter on

August 22, as she claims, she would have mentioned it to Dr. Lane on either August 24 or in her August 27 memo. The fact that she did not do so, Brantley argues, shows she was retaliating against Brantley for complaining about gender disparities and that she merely placed the August 22 date on the demotion letter to cover her retaliatory animus.

Brantley provides no evidence Strickland's story is false other than his own interpretation of what the dates on the letters mean. "To withstand a motion for summary judgment, 'the nonmovant must do more than refer to allegations of counsel contained in a brief.'" *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (quoting *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)). "Rather, *sufficient evidence* (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas*, 968 F.2d at 1024 (emphasis added).

As to the August 10 meeting, Strickland's failure to identify the job transfer as a possibility does nothing to contradict her explanation of the events surrounding her decision. Nor do the August 22 letter and August 27 memorandum to Dr. Lane create an inference of retaliatory animus.

First of all, we see no significance to the fact that Strickland did not document when she made the transfer decision in her August 22 letter. In light of this, Brantley attempts to cobble together sufficient evidence by arguing

Strickland's failure to mention his demotion to Dr. Lane on August 24 indicates she had not conceived of it until after she heard of his complaints to Dr. Lane. Brantley's argument, however, contradicts the undisputed facts and testimony. He received multiple warnings in the build up to his demotion, including his suspension for inappropriate comments and his reprimand for being insubordinate toward Houston and denigrating her to another employee. Moreover, Strickland testified, without contradiction, that several days after Brantley's insubordinate behavior toward Houston, around August 10, she discussed demoting Brantley with Dr. Lane and persons in Unified's human resources department. Brantley does not point to any evidence from Dr. Lane or Unified casting doubt on this testimony. Even if an inference could be drawn that Strickland lied about when she prepared the letter, that inference does not lead to an inference-upon-an-inference of retaliatory animus.[3] While the date on the letter *could* have significance given other evidence of retaliatory animus, without more, it does not provide evidence Strickland acted out of an illicit motive.

---

[3] Brantley suggests that *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133 (2000), compels a different conclusion. But in *Reeves* the alleged misstatement went to the reason for termination, not the timing of the decision to terminate. As *Reeves* also acknowledges, "an employer would be entitled to judgment as a matter of law . . . if the plaintiff created only a *weak issue of fact* as to whether the employer's reason was untrue, and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* at 148 (emphasis added). That is the case here.

### 2. *Temporal Proximity*

Brantley next contends the temporal proximity between his demotion and his complaint to Dr. Lane shows Unified's retaliatory animus. We disagree. As Brantley points out, we have recognized that "protected conduct closely followed by adverse action *may* justify an inference of retaliatory motive." *Marx v. Schnuck Mkts, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996) (emphasis added). But we have also consistently emphasized that "close temporal proximity is a factor in showing pretext, yet is not alone sufficient to defeat summary judgment."[4] *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (2004); *see also Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000) ("Close temporal proximity between the employee's complaint and the adverse employment action is a factor in determining whether the employer's proffered reason is a pretext for retaliation."); *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1397–98 (10th Cir. 1997) (rejecting the "breadth" of plaintiff's argument that close temporal proximity is always enough to show retaliatory intent).

In this case, Brantley can point to no supporting evidence for motive. In fact, the record shows the opposite. Prior to the job transfer, Brantley had been suspended and was in progressive discipline that could lead to termination. He

---

[4] We recognize these cases deal with the pretext analysis, but the burden plaintiffs face when showing pretext is similar to that they face when showing retaliatory animus under the mixed-motive method. They must convince the court the evidence is sufficient to create a genuine issue of material fact.

had received warnings and a reprimand for insubordination arising from his comments about Houston. Strickland testified she spoke with Dr. Lane around August 10 that she was considering transferring Brantley to a different job. Brantley offers nothing other than his own supposition to rebut Strickland's claims she prepared the transfer letter prior to Brantley's meeting with Dr. Lane. That Strickland actually followed through with her plans shortly after Brantley's meeting with Dr. Lane is not sufficient evidence to show retaliatory animus.

In sum, the district court did not err in concluding Brantley failed to produce sufficient evidence to support his retaliation claim.

## C. Due Process

Brantley also alleges Unified violated his property rights without due process of law.

As a public employee, Brantley is entitled to due process if he can show his reassignment implicates a property interest protected by the Due Process Clause. *Calhoun v. Gaines*, 982 F.2d 1470, 1476–77 (10th Cir. 1992). When determining whether an individual "has been deprived of his right to procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a *protected interest* such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate *level* of process." *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). Brantley contends he has a protected interest in his employment as a warehouse manager based on

Unified's employee manual, which defines the term "just cause" under the heading "Suspension, Non-Renewal, Termination." Aplt. App. at 185. Relying on the just cause provision, Brantley claims Unified violated his due process rights by not providing him due process in transferring him to what he claims is a less desirable position. We agree with the district court that the employee manual did not create a property right, and we therefore do not address whether the school district afforded him due process.

Under Title VII, a property right in employment arises not from "the Constitution itself" but from "independent sources such as state statutes, regulations, municipal ordinances, university rules, and even express or implied contracts." *Anglemyer v. Hamilton Cnty. Hosp.*, 58 F.3d 533, 536 (10th Cir. 1995). As an initial matter, Unified contends Kansas law forbids it from entering into employment contracts that are not "at will." Like most states, Kansas historically has followed the common law doctrine of employment-at-will. *Johnson v. Nat'l Beef Packing Co.*, 551 P.2d 779 (Kan. 1976). Employees have an at-will employment arrangement in the absence of an express or implied contract. *Id.* at 781. But the "existence of an implied contract depends on the intent of the parties, divined from the totality of the circumstances," *Anglemyer*, 58 F.3d at 537, not on a "unilateral expectation or an abstract need or desire for it." *Farthing*, 39 F.3d at 1135 (quotations omitted).

The Kansas Supreme Court has recognized the existence of an employment manual as one indicium of an implied contract, but a "written personnel policy alone is not sufficient to establish an implied contract of employment." *Brown v. United Methodist Homes for the Aged*, 815 P.2d 72, 83 (Kan. 1991). Rather, as a matter of law, plaintiffs must provide additional corroborating evidence before a court may conclude that a jury could find an implied contract. *See Id.* In *Brown*, although a policy manual made clear discharge could occur without cause, the employer's [a Methodist facility] "stated policy . . . was to treat all employees fairly in accordance with Christian principles and not to discharge an employee except 'for cause.'" *Id.* at 82. Further, a supervisor testified at trial the employer's policy was not to fire except for cause. The Kansas Supreme Court held the manual, the stated policy, and the supervisor's testimony were sufficient to create a genuine issue of material fact that a jury needed to resolve.

In a case applying *Brown*, we reviewed an employment manual explicitly providing that the employer would not terminate employees except for cause. *Farthing*, 39 F.3d at 1139. In *Farthing*, the plaintiff's supervisor testified and provided essentially a "restatement of the plain language of the relevant sections of the personnel manual." *Id.* at 1140. We reasoned that such testimony's "evidentiary worth is merely as corroborative evidence of an otherwise undisputed fact," i.e., that the manual stated the employer could not terminate someone except for cause. *Id.* We determined the testimony did "not add

-15-

anything above and beyond the terms of the personnel manual," and we concluded the "Kansas courts [did not intend] *Brown* to permit this type of evidence to suffice to withstand a motion for summary judgment." *Id.*

The same is true here. While we recognize that pursuant to Kansas law the question of whether two parties intended to enter into a contract "is normally a question of fact for the jury and that the determination of whether there is an implied contract in employment requires a factual inquiry," *Brown*, 815 P.2d at 80, the facts in this case mirror those in *Farthing*. Brantley simply has not provided enough evidence to create a genuine issue of material fact as to whether an implied-in-fact just cause contract exists.

Brantley offers Unified's employment manual and suggests the deposition testimony of Strickland and Rios support his contention a jury could find an implied contract. The manual provides a definition for "just cause" under the heading "Suspension, Non-Renewal, Termination," providing, "The term 'just cause' shall include, but shall not be limited to the following situations or acts," including insubordination, incompetency, and the like. Aplt. App. at 185. Importantly, the manual does not go on to provide that Unified may only terminate employees for just cause. Even if it did, nothing in the section suggests the just cause language applies to transfers or demotions. Unlike in *Brown* and *Farthing*, Unified does not have a stated policy, in the manual or elsewhere, that

-16-

applies to Brantley's situation. The manual itself defines "just cause," and specifically refers to three categories of discipline, none of which happened here.

To circumvent the language of the manual, Brantley contends both Strickland and Rios applied the policy more broadly to situations like his. But the testimony he points to was in the context of explaining the specific language of the manual, namely its application to suspensions, non-renewals, and terminations. Moreover, Strickland and Rios merely reiterated what the manual already said and offered their personal opinions as to the implications of that. They did not testify Brantley was entitled to invoke the provision for his job reassignment. Without more, Brantley has not provided enough evidence to persuade us there is a genuine issue of material fact regarding the existence of an implied-in-fact contract.

In sum, the district court correctly concluded Brantley does not have a protected property interest based on the manual.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's decision.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

-17-