**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 28 2003**

**PATRICK FISHER**
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DAVID MINSHALL,

        Plaintiff-Appellee,

v.

McGRAW HILL BROADCASTING
COMPANY, INC., doing business as
KMGH, Channel 7,

        Defendant-Appellant.

Nos. 01-1576 and 02-1049

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 98-M-2694)**

---

David A. Lane, (Mari Newman, with him on the brief), Miller, Lane, Killmer &
Greisen, LLP, Denver, Colorado, for Plaintiff-Appellee.

Henry D. Lederman, (Franklin A. Nachman, with him on the briefs), Littler
Mendelson, Denver, Colorado, for Defendant-Appellant.

---

Before **MURPHY**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I.      INTRODUCTION

David Minshall ("Minshall") filed this suit against his former employer, McGraw-Hill Broadcasting Company ("McGraw-Hill"), alleging that McGraw-Hill unlawfully discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and Colo. Rev. Stat. §§ 24-34-401 to -406.  Minshall also alleged a claim for intentional infliction of emotional distress.  The district court granted McGraw-Hill summary judgment on the intentional infliction of emotional distress claim, which Minshall does not appeal.

After a trial on the merits of Minshall's discrimination claims, a jury returned a verdict in his favor finding that McGraw-Hill discriminated against him on the basis of age.  Answering special interrogatories, the jury also found that McGraw-Hill's conduct was willful.  The jury awarded Minshall back pay in the amount $212,326.00 and found that the award of back pay should not be reduced by any failure to mitigate damages.  The question of whether Minshall was entitled to front pay was reserved for the district court.  In an advisory capacity, however, the jury recommended that he be awarded front pay in the amount of $137,500.00.  In a post-trial order, the district court awarded Minshall front pay in the amount of $137,500.00.  The court also awarded $212,326.00 in liquidated damages and $153,958.00 in attorney's fees.

McGraw-Hill moved for judgment as a matter of law ("JMOL") at the close of evidence, renewed its motion for JMOL in a post-trial motion, and, in the alternative, moved for a new trial. McGraw-Hill also moved to alter or amend the judgment on front pay and back pay. The district court denied McGraw-Hill's motions.

McGraw-Hill appeals the district court's denial of its motions for JMOL, new trial, and to alter or amend the judgment. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the judgment.[1]

## II.    BACKGROUND

McGraw-Hill does business as KMGH-TV ("KMGH") in Denver, Colorado. Minshall worked as an on-air investigative reporter with KMGH from 1980 until KMGH decided not to renew his contract on March 10, 1997. At the time KMGH decided not to renew his contract, Minshall was over 50 years old.

At trial, evidence was introduced that in 1995, Minshall violated an agreement to protect the anonymity of a source by allowing a document to be aired showing the source's name. McGraw-Hill introduced evidence that Minshall appeared visibly intoxicated while accepting an award for a series on drunk driving at a 1995 Emmy Awards ceremony. Minshall testified that he

---

[1] McGraw-Hill filed a motion to supplement the record on appeal. Minshall does not oppose the motion. McGraw-Hill's motion is **granted**.

apologized for his conduct at the Emmy Awards ceremony and admitted that he was partially at fault for the disclosure of the source's identity. KMGH did not threaten to terminate Minshall over either of these incidents.

In April 1996, KMGH hired Melissa Klinzing ("Klinzing") as News Director. To promote KMGH's news programs and boost ratings, Klinzing initiated a news format known as "Real Life, Real News." Klinzing designed "Real Life, Real News" with the intention of reaching a younger demographic than that which historically watched KMGH news programs. To achieve this goal, the cosmetic look of the news programs was altered. Klinzing considered the physical appearances of the on-air anchors and reporters in making changes to the overall appearance of the news programs.

Under Klinzing's direction, anchors Ernie Bjorkman ("Bjorkman") and Bertha Lynn ("Lynn"), individuals over the age of 40, were removed from the ten o'clock nightly news and replaced by anchor Natalie Pujo ("Pujo") who was between 20 and 30 years old. Both Bjorkman and Lynn testified that they believed they were removed from the ten o'clock nightly news because of their age. Ron Allen ("Allen"), a weatherman at KMGH over the age of 40, testified that he was also given increasingly less favorable job assignments at KMGH. At trial, Minshall also introduced evidence of several age-related statements made by Klinzing in reference to the news format, Minshall, and other on-air news

personalities who were over the age of 40.  McGraw-Hill, however, presented evidence that reporters Bill Clarke ("Clarke") and Paul Reinertson ("Reinertson"), who were over 40 years old, received no less on-air time after Klinzing was employed at KMGH.

Minshall's contract was set to expire in August 1996.  Executive Producer Kathleen Sullivan ("Sullivan") testified that she recommended Klinzing not renew his employment.  McGraw-Hill presented evidence that Minshall submitted several stories late and submitted a report during a ratings period that was unacceptable.  Clarke, a reporter and news anchor, testified that Minshall's scripts were easily recognized for being incomplete and for containing factual errors.

Anchors Bjorkman and Lynn, however, testified that they were of the opinion that Minshall was a good reporter.  Lynn testified that his scripts were no worse than other reporters.  Allen testified that Minshall was a motivated and tenacious reporter.  Minshall testified that, prior to Klinzing's employment, he had never been informed that his script writing or punctuality was a problem.

Klinzing renewed Minshall's contract for six months in August 1996.  She, however, wrote Minshall a detailed memorandum summarizing her expectations for his improvement.  Klinzing wrote, "At the end of the 6 months, if you're performing up to expected levels, we'll talk about a new contract."  By letter,

Minshall accepted the conditions of the August 1996 memorandum and the six-month contract.

McGraw-Hill presented evidence that, after accepting the six-month contract, Minshall sometimes failed to attend morning staff meetings, failed to suggest ideas for new stories, and finished assignments immediately before deadlines. McGraw-Hill also presented evidence that, while under the six-month contract, he was assigned to investigate a story for which he failed to interview any witnesses and tried to use videotape that was not of the reported business. Further, McGraw-Hill presented evidence that on another story, Minshall attempted to report about one vehicle while using videotape of another vehicle.

At the end of the six-month contract, Klinzing recommended that Minshall's contract not be renewed. On March 10, 1997, KMGH decided not to renew his contract. KMGH instructed Klinzing not to interview anyone under the age of 40 to replace Minshall.

After KMGH decided not to renew his contract, Minshall chose not to search for employment as an investigative reporter outside of Denver because he did not want to relocate his family. Minshall, however, made telephone calls and sent letters to other television stations in Denver. After failing to obtain employment as an investigative reporter, he attempted to secure employment in public relations. A few months later, Minshall was hired by BVP Media to teach

media training. At BVP Media, he earned approximately $70,000 in salary and benefits. Minshall, however, quit this job after approximately one year to work as a self-employed media trainer.

## III. DISCUSSION

### A. Motion for JMOL

The district court denied McGraw-Hill's motion for JMOL. This court reviews *de novo* the denial of a motion for JMOL. *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 549 (10th Cir. 1999). In reviewing the district court's refusal to grant JMOL, this court "draw[s] all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Further, this court does "not weigh the evidence, pass on the credibility of the witnesses, or substitute [its] conclusions for that of the jury." *Medlock*, 164 F.3d at 549 (quotation omitted). The district court's refusal to grant JMOL will "only [be] reverse[d] if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Id*. (quotation omitted).

#### 1. Age Discrimination Claims

McGraw-Hill argues that Minshall failed to present sufficient evidence to establish that it discriminated against him on the basis of age when deciding not to renew his contract. *See Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 744 (10th

Cir. 1991) (holding that after a full trial on the merits of plaintiff's discrimination claim, the remaining "single overarching issue [is] whether plaintiff adduced sufficient evidence to warrant a jury's determination that adverse employment action was taken against him on the basis of age"). After reviewing the record as a whole, this court is satisfied that Minshall offered sufficient evidence on which the jury could reasonably conclude McGraw-Hill's decision not to renew his contract was impermissibly based on his age.

At trial, McGraw-Hill presented evidence that the decision not to renew the contract was based on Minshall's poorly written scripts, tardiness, violations of professional ethics in disclosing the identity of a confidential informant, improper use of video in stories, and public drunkenness at a 1995 Emmy Awards ceremony. Minshall, however, presented contrary evidence that created a jury issue regarding McGraw-Hill's purported reasons for not renewing his contract.

Minshall presented the testimony of Lynn that Minshall's scripts were no worse than any other reporter's scripts. Lynn and Bjorkman both testified that they had never been confused in a newscast by any misspellings in Minshall's scripts. The evidence presented at trial showed that prior to Klinzing's employment at KMGH, Minshall had never been informed that his spelling or punctuality was a problem or was grounds for termination. Lynn and Bjorkman, who worked with Minshall for several years, testified that they thought Minshall

was a good reporter. Further, Allen testified that he believed Minshall was a motivated and tenacious reporter.

McGraw-Hill argues that Lynn, Bjorkman, and Allen's testimony is irrelevant because they did not supervise Minshall and likely did not see his unedited work. While this court does not "sit as a super-personnel department that second-guesses the [defendant's] business decisions, . . . evidence indicating that an employer misjudged an employee's performance . . . is, of course, relevant to the question of whether [the employer's] stated reason [for its actions] is . . . masking prohibited discrimination." *Tyler v. Re/Max Mountain States, Inc.*, 232 F.3d 808, 813-14 (10th Cir. 2000) (quotation omitted). Lynn, Bjorkman, and Allen each had the opportunity to professionally observe Minshall's work while at KMGH. Accordingly, their testimony was relevant in assessing the veracity of McGraw-Hill's reasons for not renewing Minshall's contract.

Minshall also presented evidence that he was never threatened with termination regarding the disclosure of the identity of a confidential informant or his conduct at the Emmy Awards ceremony. Both of these incidents occurred over a year before KMGH's decision not to renew Minshall's contract and prior to Klinzing's employment at KMGH.

Finally, Minshall presented evidence that several on-air employees over the age of 40 were treated adversely while Klinzing was employed at KMGH.

Specifically, Minshall introduced evidence that both Lynn and Bjorkman, who are over 40 years old, were removed from the ten o'clock nightly newscast and were replaced by Pujo, a woman in her late twenties or early thirties. Minshall also introduced evidence that Allen was given less favorable assignments as he aged. McGraw-Hill argues that because it presented evidence that Clarke and Reinertson, reporters over 40 years old, had no less on-air time after Klinzing was employed, the jury could not reasonably infer that Minshall's contract was not renewed because of his age. The jury, however, could reasonably infer from the evidence, albeit conflicting, that KMGH was reducing the air time of people over 40 years old and that Minshall's contract was not renewed because of his age.

In addition to introducing evidence to rebut the truthfulness of McGraw-Hill's asserted reasons for not renewing his contract,[2] Minshall introduced evidence that Klinzing was motivated by age-based animus and was principally responsible for the non-renewal of his contract. As News Director, Klinzing developed the news format and was responsible for renewing Minshall's contract. Klinzing testified that she created the news format, "Real Life, Real News," with

_____

[2] McGraw-Hill argues that Minshall failed to present evidence to rebut each of its stated reasons for not renewing Minshall's contract. While, in general, "an employee must proffer evidence that shows each of the employer's justifications are pretextual . . . when the plaintiff casts substantial doubt on many of the employer's multiple reasons, the jury could reasonably find the employer lacks credibility." *Tyler v. Re/Max Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000). Such is the case here.

the intention of reaching a younger demographic and that she considered the physical appearance of the on-air anchors and reporters in making overall changes to the news programs. Allen testified that Klinzing told him not to "wear a tie" and to "try to go with a younger look." Allen also testified that Klinzing said she didn't care if older people were watching television and that she was disgusted when she saw "an old fart" on television without a shirt. Minshall testified that Klinzing constantly talked to him about "a younger presentation, a more youthful presentation," and that she wanted "sexier stories" that would appeal to a younger audience. Minshall and Lynn both testified that Klinzing asked them about their ages. Scott Sobel, a former reporter and anchor at KMGH, testified that Klinzing said Allen was "too fucking old" for the news format. Finally, Minshall introduced evidence that Klinzing said, in reference to her father, "old people should die."

McGraw-Hill argues that the jury could not infer that age animus motivated Klinzing's decision not to renew Minshall's contract because she offered him a six-month contract in August 1996 and others at KMGH agreed with Klinzing's assessment of Minshall's work performance. McGraw-Hill further argues that if Klinzing was truly motivated by age animus she would have terminated Minshall in August 1996. Finally, McGraw-Hill argues that Klinzing was pleased with Minshall's on-air performance. Therefore, McGraw-Hill contends, the jury could

not have reasonably concluded that Klinzing was motivated by age animus when she recommended that Minshall's contract not be renewed. While the evidence could support McGraw-Hill's interpretation, the jury reasonably rejected such an interpretation.

McGraw-Hill also argues that the statements attributed to Klinzing were stray comments and constitute an insufficient basis from which to draw an inference of age discrimination. While "[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions," a plaintiff can show such animus by "demonstrat[ing] a nexus between the allegedly discriminatory statements and the defendant's decision to terminate [the plaintiff]." *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994) (holding that "[a] causal nexus can be shown if the allegedly discriminatory comments were directed at the plaintiff, her position, or the defendant's policy which resulted in the adverse action taken against the plaintiff" (quotation omitted)).[3]

---

[3] Minshall argues that he need not establish a nexus between Klinzing's age-related statements and the decision not to renew his contract because he is only offering the statements as circumstantial evidence of age discrimination. Because we decide *infra* that a nexus exists between the majority of Klinzing's comments and the decision not to renew Minshall's contract, and that these age-related comments are sufficient to support the jury's verdict, we need not address this argument.

In this case, Klinzing's statements regarding the newly-introduced news format, including her instructions to Minshall and Allen regarding their on-air presentations, were not stray comments. Minshall argued that his contract was not renewed because, under the news format, Klinzing did not want to utilize on-air reporters over 40 years old.[4] Therefore, there was a nexus between Klinzing's statements with respect to the news format and Klinzing's decision not to renew Minshall's contract.

With respect to Klinzing's statement that Allen was too old for the news format, McGraw-Hill argues that this was a stray comment because it was not directed at Minshall and there was no connection between Allen's loss of air time and the decision not to renew Minshall's contract. Klinzing's statement, however, pertained to her motivation in developing the news format. Because Minshall presented evidence that Klinzing's decision not to renew his contract was motivated by her desire to reduce the presence of on-air reporters over 40 years old under the news format, however, there was a nexus between Klinzing's statement regarding Allen and her decision not to renew Minshall's contract.

---

[4]McGraw-Hill argues that Klinzing's comments refer to her goal of reaching younger viewers, a goal not prohibited by the ADEA. The jury could, however, reasonably infer from the totality of Klinzing's comments that her decision not to renew Minshall's contract was based on age animus.

Further, Klinzing's statements regarding older people watching or being broadcast on television were not stray comments. Klinzing testified that she considered the physical appearance of the on-air reporters in making changes to the overall appearance of the news program. As stated above, there was a nexus between Klinzing's statements made regarding the news format and her decision not to renew Minshall's contract. Similarly, there was a nexus between these statements and the decision not to renew Minshall's contract. In contrast, Klinzing's statement that "old people should die" was a stray comment. It is undisputed that Klinzing made this statement in reference to her father. Therefore, there is no connection between this statement and Klinzing's decision not to renew Minshall's contract.[5]

Viewing the record as a whole, this court is satisfied that the jury reasonably concluded that KMGH unlawfully discriminated against Minshall on the basis of age when it decided not to renew his contract. Accordingly, the district court did not err in denying McGraw-Hill's motion for JMOL.

## 2. Willfulness under the ADEA

A plaintiff may be awarded liquidated damages under the ADEA if the defendant's violation was "willful." 29 U.S.C. § 626(b). In this case, the jury

---

[5] As discussed *infra*, the district court's admission of this stray comment did not constitute reversible error.

found that McGraw-Hill's violation of the ADEA was willful and the court awarded liquidated damages. McGraw-Hill argues that the award was in error because Minshall failed to present sufficient evidence to support the jury's determination that its violation of the ADEA was willful. Moreover, McGraw-Hill argues that it presented sufficient evidence that it acted with a good faith belief that its conduct was lawful.

Under the ADEA, a violation is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617 (1993). McGraw-Hill argues that because Minshall never complained Klinzing was discriminating against him, it acted on a good faith belief that its decision not to renew his contract was lawful. Klinzing, however, testified that she was instructed by KMGH not to hire anyone under the age of 40 to replace Minshall. From this evidence, the jury could reasonably conclude that McGraw-Hill knew its decision not to renew Minshall's contract was in violation of the ADEA or acted with reckless disregard over the matter. Accordingly, the district court did not err in granting Minshall liquidated damages.

**B. Motion for a New Trial**

This court reviews the district court's denial of McGraw-Hill's new trial motion for abuse of discretion. *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1296 (10th

Cir. 1998). This court will "reverse the denial of a motion for a new trial only if the trial court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Weese v. Schukman*, 98 F.3d 542, 549 (10th Cir. 1996).

When the issue of whether to grant a new trial "hinges on the admissibility of evidence," this court reviews the "admission of the evidence for abuse of discretion." *Sanjuan*, 160 F.3d at 1296. If the evidence was erroneously admitted, this court "will set aside a jury verdict only if the error prejudicially affects a substantial right of a party." *Id.* Further, "[e]vidence admitted in error can only be prejudicial if it can be reasonably concluded that . . . without such evidence, there would have been a contrary result." *Id.* (quotation omitted).

## 1. Statements Made in Connection with Klinzing's Deposition

Because Klinzing was no longer an employee of McGraw-Hill and was outside the district court's subpoena power at the time of trial, excerpts of her deposition testimony were read to the jury. Outside the presence of the jury, Minshall's counsel requested permission from the district court to explain to the jury that Klinzing's absence was motivated by her fear of being cross-examined. The district court denied this request.

Prior to the introduction of Klinzing's deposition testimony, the district court instructed the jury that Klinzing was in New Jersey and could not be subpoenaed. The district court instructed the jury as follows:

> To the extent that you're able, of course, you're instructed that you should give the testimony of Miss Klinzing the same weight and credibility as you would as if she had appeared at the trial.

Minshall's counsel preserved an objection.

Subsequent to the reading of Klinzing's testimony, the district court asked whether there were any portions of the deposition Minshall's counsel wanted read into the record. He responded, "If Ms. Klinzing were here, your Honor, I'd cross-examine her, but she's not."

Later during the trial, McGraw-Hill's counsel questioned a witness on redirect: "So in this proceeding, we have one person saying it happened, another person[, Klinzing,] saying it didn't happen; is that right?" Minshall's counsel objected saying, "That misstates the evidence. We have a deposition saying it didn't, and we have a live witness saying it did." The district court responded, "All right. That's more correct."

At closing argument, Minshall's counsel argued:

> But let's talk about the facts that we heard. All right. Because really and truly, what it comes down to, the key witness on that witness stand, the No. 1 witness that you have to consider in their case never bothered to come to this courthouse to swear an oath to tell the truth, to walk up to that witness stand and get cross-examined by me. And that's Melissa Klinzing. Why isn't Melissa Klinzing here on that witness stand getting cross-examined

- 17 -

like every other witness in this case? Their excuse is, well, she lived more than a hundred miles out of the range of subpoena. Can't subpoena her in.
. . . .
The one witness, the main discriminator in this case, mailed it in. Do you remember in her deposition she accused Dave Minshall: He's just mailing it in. No, she's mailing it in, and they're going to stand up here and ask you, Oh, well you heard in her deposition where she said blah, blah, blah, blah. You didn't get to look at her. This court will instruct you, you can consider the demeanor of a witness on the witness stand and the method of testimony and you can toss the whole thing in the trash can if you want to. And that's what it deserves. The discriminator denies discriminating in her mailed-in testimony, where she won't even have the guts to come in here and get on that witness stand, look you in the eye, and tell you why she did what she did.

McGraw-Hill's counsel attempted to explain Klinzing's absence in closing arguments. Minshall's counsel objected saying:

Judge, I'm going to object to this; that Counsel knows full well why she didn't show up, and this is not a good faith statement by counsel. He's represented to the Court why she's declined to come.

The district court overruled the objection.

Drawing from these trial incidents, McGraw-Hill contends the following constitute reversible error: 1) Minshall's objection to the admission of Klinzing's deposition testimony; 2) statements made to the jury suggesting Klinzing's deposition testimony was not subject to cross-examination; 3) the district court's failure to curb counsel's arguments regarding Klinzing's deposition testimony; and 4) the argument, made in closing, that Klinzing's deposition testimony be disregarded.

- 18 -

McGraw-Hill argues that Minshall's counsel improperly objected to the admission of Klinzing's deposition testimony because the district court had previously ruled in a motion in limine that it was admissible. While McGraw-Hill argues that the objection was already preserved, the objection was properly made contemporaneous with the introduction of Klinzing's deposition testimony. *See United States v. Mejia-Alarcon*, 995 F.2d 982, 988 (10th Cir. 1993) (reasoning that "[p]rudent counsel will renew objections [ruled on by the district court in a motion in limine] at trial . . . [because] most objections will prove to be dependent on trial context and will be determined to be waived if not renewed at trial"). Therefore, Minshall's objection did not constitute reversible error.

McGraw-Hill also argues that the statements of Minshall's counsel to the jury regarding his inability to cross-examine Klinzing constitute reversible error. Minshall's counsel argued to the jury that he was unable to cross-examine Klinzing under oath. He was, however, able to cross-examine Klinzing during her deposition testimony. McGraw-Hill did not object to counsel's statements at trial. Moreover, the district court instructed the jury that "[t]o the extent that you're able, of course, you're instructed that you should give the testimony of Miss Klinzing the same weight and credibility as you would as if she had appeared at the trial." Therefore, the district court did not abuse its discretion, and, even

assuming the statements of Minshall's counsel constituted error, such error was harmless.

Finally, McGraw-Hill argues that the arguments made in closing, suggesting that Klinzing's deposition testimony be disregarded, and the district court's failure to curb Minshall's counsel constitute reversible error. While McGraw-Hill raised the issue of what constituted permissible commentary regarding Klinzing's deposition in pre-trial discussions with the district court, McGraw-Hill failed to object to comments in closing argument, failed to move for a mistrial or new trial prior to the return of the verdict, and failed to offer a proposed corrective instruction. Although this court "will correct error in rare instances where it appears that a verdict was the result of passion aroused through extreme argument which clearly stirred the resentment and aroused the prejudice of the jury even though no objection was made or exception taken at the time," this is not such a case. *Sill Corp. v. United States*, 343 F.2d 411, 421 (10th Cir. 1965) (quotation omitted). At closing, Minshall's counsel argued that the jury should consider Klinzing's failure to testify in person at trial when evaluating her testimony. The district court ultimately instructed the jury to "[c]onsider each witness' intelligence, motive, state of mind, demeanor and manner while on the stand." Minshall's argument pertained to the "manner" in which Klinzing testified and was, therefore, permissible under the pertinent jury instruction to

which there was no objection. Even assuming that Minshall's arguments were improper, the district court further instructed the jury that the "[s]tatements and arguments of counsel . . . are not evidence," and that "[t]o the extent that you're able, of course, you're instructed that you should give the testimony of Miss Klinzing the same weight and credibility as you would as if she had appeared at the trial." Because the jury's verdict is supported by the record and the district court gave proper limiting jury instructions, this court is satisfied that the verdict was not merely a result of "passion aroused though extreme argument." *See Sill Corp.*, 343 F.2d at 421.

## 2. Co-Workers' Testimony

### a. Opinions regarding age discrimination at KMGH

At trial, Minshall introduced the testimony of Lynn, Bjorkman, and Allen who opined that they were subjected to age discrimination at KMGH while Klinzing was employed. McGraw-Hill argues that the district court abused its discretion in admitting this testimony because it was irrelevant and unduly prejudicial.

The testimony of employees, other than plaintiff, is relevant in assessing the employer's discriminatory intent if the employees' testimony can logically or reasonably be tied to the adverse employment action taken against the plaintiff. *See Curtis v. Oklahoma City Pub. Schs. Bd. of Educ.*, 147 F.3d 1200, 1217 (10th

Cir. 1998); *see also Sanjuan*, 160 F.3d at 1297. McGraw-Hill argues that the testimony of Lynn, Bjorkman, and Allen is irrelevant because none of them were terminated by Klinzing and each testified that they believed they were discriminated against because of their on-air appearance. McGraw-Hill argues that, in contrast, Klinzing praised Minshall for his on-air work.

Contrary to McGraw-Hill's argument, the testimony of Lynn, Bjorkman, and Allen is logically or reasonably tied to KMGH's decision not to renew Minshall's contract. Klinzing was responsible for establishing the "Real Life, Real News" format and for supervising Lynn, Bjorkman, Allen, and Minshall. Moreover, Klinzing made the decisions to remove Lynn and Bjorkman from the ten o'clock nightly news report, to move Allen to less favorable reporting assignments, and to not renew Minshall's contract.

McGraw-Hill also argues that Lynn, Bjorkman, and Allen's testimony was unduly prejudicial and confusing and should have been excluded under Rule 403 of the Federal Rules of Evidence. As discussed above, the circumstances surrounding Lynn, Bjorkman, and Allen's employment were substantially similar to the circumstances surrounding Minshall's employment prior to the non-renewal of his contract. Accordingly, this testimony was probative of McGraw-Hill's discriminatory intent. Moreover, McGraw-Hill fails to articulate how Lynn, Bjorkman, and Allen's testimony confused the jury. After reviewing the record,

this court is satisfied that the district court did not abuse its discretion in ruling that the testimony was not unduly prejudicial.

Accordingly, because Lynn, Bjorkman, and Allen's testimony was relevant and not unduly prejudicial, the district court did not abuse its discretion in admitting the testimony.

### b. Opinions regarding Minshall's work

At trial, Lynn, Bjorkman, Allen, and Sobel testified that they believed Minshall was a good reporter. McGraw-Hill argues that the district court abused its discretion in admitting this testimony because these individuals did not supervise Minshall and, therefore, did not have a basis for their opinions. Minshall argues that Lynn, Bjorkman, Allen, and Sobel based their opinions on their personal observations of Minshall's work at KMGH.

Lynn, Bjorkman, Allen, and Sobel each had the opportunity to observe Minshall's work while at KMGH. Lynn and Bjorkman testified that they used Minshall's scripts. Allen and Sobel also worked with Minshall and had the opportunity to observe his reporting. Accordingly, Lynn, Bjorkman, Allen, and Sobel had a professional basis for their opinions of Minshall's work.

Further, the district court instructed the jury as follows:

The opinions of the plaintiff's coworkers regarding the plaintiff's job performance are not necessarily relevant to your determination of whether the defendant's decisions for not renewing the plaintiff's employment

contract was because of his age unless the coworker had a basis to evaluate the plaintiff's performance.

In light of the basis for the testimony and the limiting instruction, the district court did not abuse its discretion in admitting the testimony of Lynn, Bjorkman, Allen, and Sobel.

### 3. Age-Related Comments

Minshall introduced several age-related statements made by Klinzing while she was employed at KMGH. McGraw-Hill argues that the district court erred in admitting these statements because they were stray comments and were unduly prejudicial.

As discussed above, while Klinzing's statement that "old people should die" was a stray comment, the remainder of Klinzing's comments were not stray. The district court clearly did not abuse its discretion in admitting the latter and the former did not prejudicially affect McGraw-Hill. *See Sanjuan*, 160 F.3d at 1296 (holding that this court will set aside a jury verdict only if the evidence admitted in error prejudicially affects the opposing party such that it "can be reasonably concluded that . . . without such evidence, there would have been a contrary result" (quotations omitted)). Accordingly, the district court's admission of Klinzing's stray statement did not constitute reversible error.

Minshall also introduced an age-related, graphic comment made by Brad Remington ("Remington"), a former managing editor at KMGH. McGraw-Hill

- 24 -

argues that this statement should have been excluded as a stray comment because Remington did not participate in the decision not to renew Minshall's contract. Because "age-related comments by non-decisionmakers are not material in showing the [defendant's] action was based on age discrimination," Remington's statement was a stray comment. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994). As with Klinzing's stray comment, however, the admission of Remington's stray comment did not prejudicially affect McGraw-Hill and the district court's admission of the comment did not constitute reversible error.

### 4. Cumulative Effect of Errors

McGraw-Hill argues that the cumulative effect of the errors in this case mandates a new trial. Under the cumulative-error analysis, this court "aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *United States v. Rivera*, 900 F.2d 1462, 1470 (10th Cir. 1990) (en banc). Even after considering the cumulative effect of the admission of two stray comments and comments made by Minshall's counsel on his inability to cross-examine Klinzing, there is no basis on which to order a new trial.

## C. Motion to Set Aside or Reduce the Judgment

This court reviews the district court's ruling on a Rule 59(e) motion for abuse of discretion. *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997). Accordingly, this court will not reverse the decision of the district court unless the district court made a "clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id*.

The jury awarded Minshall back pay in the amount $212,326.00 and found that the award of back pay should not be reduced for earnings and benefits acquired since Minshall's termination nor by any failure to mitigate damages. In a post-trial order, the district court awarded Minshall front pay in the amount of $137,500.00. McGraw-Hill argues that it is entitled to a reduction in the judgment for front pay and back pay because Minshall's evidence of mitigation is inadequate as a matter of law.

"A claimant need only make a reasonable and good faith effort [to mitigate], and is not held to the highest standards of diligence." *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1158 (10th Cir. 1990). Moreover, the "burden is on the employer to establish that the claimant did not exercise reasonable diligence." *Id*. While Minshall chose not to relocate his family, he made telephone calls and sent letters to other television stations in Denver to obtain a job in investigative reporting. After failing to obtain employment as an investigative reporter, Minshall attempted to secure employment in public relations. BVP Media hired

Minshall to teach media training. At BVP Media, Minshall earned approximately $70,000 in salary and benefits. Minshall decided to quit this job after approximately one year to work as a self-employed media trainer. While McGraw-Hill argues that Minshall should have attempted to find an investigative reporting job in the national market and should not have left his employment at BVP Media to become self-employed, this court is not satisfied that Minshall failed as a matter of law to make reasonable efforts to mitigate.

McGraw-Hill also argues that it is entitled to a reduction in the judgment for front pay because there was insufficient evidence that Minshall would have continued his employment at KMGH as an investigative reporter until his retirement. McGraw-Hill, however, first raised this argument in its reply brief. Therefore, this argument is waived. *Coleman v. B-G Maint. Mgmt.*, 108 F.3d 1199, 1205 (10th Cir. 1997) (holding that "[i]ssues not raised in the opening brief are deemed abandoned or waived"). Nevertheless, after reviewing the record, this court is satisfied that the district court did not abuse its discretion in denying McGraw-Hill's motion to set aside or reduce the judgment for front pay.

IV.  **CONCLUSION**

For the foregoing reasons, this court **affirms** the district court's denial of McGraw-Hill's motions for JMOL, new trial, and to alter or amend the judgment for front pay and back pay.