FILED
U.S. Bankruptcy
Appellate Panel of the
Tenth Circuit

July 30, 2020

Blaine F. Bates
Clerk

PUBLISH

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

———————————————————

IN RE ROY NIELSEN HAFEN,

Debtor.

———————————————————

ROY NIELSEN HAFEN,

Appellant,

v.

LARRY J. ADAMS, JED R. CHRISTENSEN, KIRK R. HARRISON, ROGER OLDROYD, and RANDY T. SIMONSEN,

Appellees.

BAP No. UT-19-031

Bankr. No. 04-25018
Chapter 7

OPINION

———————————————————

Appeal from the United States Bankruptcy Court
for the District of Utah

———————————————————

Chris L. Schmutz of Schmutz & Mohlman, Bountiful, Utah for Appellant.

Matthew D. Ekins of Gallian Welker & Beckstrom, L.C., St. George, Utah for Appellees.

———————————————————

Before **MICHAEL**, **SOMERS**, and **JACOBVITZ**, Bankruptcy Judges.

———————————————————

**MICHAEL**, Bankruptcy Judge.

———————————————————

Old grudges die hard. Several years before filing a chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court"), Roy Nielson Hafen (the "Debtor") solicited investors in an advertising business venture which was nothing more than a scam. After it failed to produce the promised returns, Debtor sought refuge in the bankruptcy courts. Although the investors received notice of the Debtor's bankruptcy petition, they did not pursue any action in the bankruptcy case. Almost thirteen years after the Debtor received his discharge, the investors sought to enforce their claims against property they allege the Debtor fraudulently transferred before the petition date or failed to disclose in his bankruptcy petition through an action against the Debtor filed in state court. The Debtor moved for sanctions for violation of the discharge injunction alleging, in part, that the investors lacked standing to bring the claims (if they existed) because the claims were property of the bankruptcy estate and therefore belonged to the bankruptcy trustee. The Bankruptcy Court denied the request for sanctions without considering the issue of standing, stating that standing was a matter that could be decided by the state court. Upon review, we determine the Bankruptcy Court committed error when it failed to exercise its exclusive jurisdiction to determine whether the causes of action raised by the investors belonged to the Debtor's bankruptcy estate, as this issue is central to whether the investors had standing to pursue those claims and whether they violated the discharge injunction. Accordingly, we REVERSE and

REMAND so that the Bankruptcy Court may consider the issues of claim ownership and standing, and thereafter reconsider whether the discharge injunction has been violated.[1]

## I.    Background

The Debtor held a license as a broker-dealer from the Utah Division of Securities allowing him to sell investment contracts in Utah. Between 2000 and 2002, the Debtor sold security investments in two companies, Buckingham, LLC, operating under the name Video Venue, and Red Mountain Investment Company, LLC to thirteen investors. The Debtor told the investors Video Venue needed short term operating capital to develop and install video advertising screens in gas pumps at service stations. The Debtor promised an eye-popping five percent per-month return on investment and repayment in full within ninety days. In addition to the five percent return, the Debtor told potential investors they would receive a one percent equity interest in Video Venue for every $300,000 invested. The Debtor provided falsified financial documents to satisfy investor inquiries.

If something sounds too good to be true, it probably is. After several complaints and an investigation, the Utah Division of Securities concluded that the Debtor engaged in a Ponzi scheme, using the "investments" in Video Venue from new investors to pay the promised returns to earlier investors, while the Debtor skimmed part of the funds for

---

[1]    If the investors brought claims that did not belong to them, this fact could impact the determination of whether they violated the discharge injunction. We offer no opinion on that issue, as it has yet to be considered by the Bankruptcy Court.

his own use.[2] In a stipulation with the Utah Division of Securities resolving claims against him, the Debtor admitted to misrepresenting the risk and facts regarding the investment return and repayment.[3] As part of the stipulation, the Debtor agreed to restitution of $102,000, split between the thirteen investors, based on the $102,000 in ill gotten "commissions" he took from the investments.

The Debtor filed a chapter 7 petition under the United States Bankruptcy Code on March 30, 2004.[4] He disclosed assets with a total value of $11,560 and listed unsecured debts exceeding $5,000,000. The Debtor included the claims of the defrauded Video Venue investors in Schedule F, *Creditors Holding Unsecured Nonpriority Claims*, of his petition. He listed Jed Christenson, Larry Adams, Roger Oldroyd, Randy Simonsen, and Scott Smith[5] as unsecured creditors, each holding a claim of between $250,000 and $500,000 (hereinafter referred to as the "Investors"). The chapter 7 trustee appointed in

---

[2] The United States Court of Appeals for the Tenth Circuit has defined a "Ponzi scheme" as

> . . . an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments. Typically, investors are promised large returns for their investments. Initial investors are actually paid the promised returns, which attract additional investors.

*In re Hedged-Inv. Assocs., Inc.,* 48 F.3d 470, 471 n.2 (10th Cir. 1995).

[3] *Stipulation & Consent Order*, *in* Appellant's App. at 69.

[4] All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[5] Scott Smith assigned his claim against the Debtor to Kirk Harrison, who proceeds in this appeal.

the Debtor's case collected assets and distributed approximately $5,000 to creditors. The Bankruptcy Court granted the Debtor an uncontested discharge on May 11, 2005.

In June 2018, approximately thirteen years after the entry of discharge, the Investors filed a motion to reopen the Debtor's bankruptcy case and requested the appointment of a chapter 7 trustee. The Investors based the motion to reopen on allegations the Debtor concealed or otherwise failed to disclose assets and that the chapter 7 trustee did not administer the undisclosed assets in the bankruptcy case. The Bankruptcy Court reopened the case on August 17, 2018, and appointed a trustee.

Without seeking or obtaining a comfort order from the Bankruptcy Court that the automatic stay did not apply or waiting for a ruling on the motion to reopen the bankruptcy case, the Investors filed a complaint in the Fifth Judicial District Court in and for Washington County, Utah (the "State Court") on July 19, 2018 (the "Complaint") asserting claims against the Debtor, his wife, and other related entities and parties.[6] The Complaint named the Debtor; his wife; C.A.R. Trust; R. Nielsen Hafen and C. Marie Hafen as Trustees of C.A.R. Trust; Elwin F. Prince; ACOM, LLC; Daniel Roy Hafen, LTD; and other unknown parties allegedly in possession of the Debtor's assets as defendants. The Investors allege they were harmed by the Debtor's misrepresentations, which induced them to invest in Video Venue. The Investors also allege the Debtor transferred property shortly before filing his bankruptcy case and failed to disclose ownership interests of other property in his bankruptcy case. Specifically, the Investors

---

[6]    As amended on December 28, 2018. *First Amended Complaint*, *in* Appellant's App. at 352.

allege the Debtor used his position as a manager of ACOM, LLC to cause it to transfer two real properties to his brother-in-law, Elwin Prince, and failed to disclose these transfers in his bankruptcy petition.[7] The Investors allege such disclosure was required because ACOM, LLC's properties actually belonged to the Debtor. The Complaint alleges Elwin Prince transferred the two real properties to the Debtor's wife, Cindy Hafen, on August 25, 2006, and that Cindy Hafen transferred the real properties to the C.A.R. Trust on November 5, 2009. The Complaint asserts the Debtor and his wife are the sole beneficiaries of the C.A.R. Trust. As a result, the Investors allege the Debtor prevented recovery on their claims and seek to recover against the other defendants in possession of property traceable to the Debtor.

The Complaint also alleges the Debtor's bankruptcy schedules failed to disclose his interests in an entity named Daniel Roy Hafen, Ltd., which held title to several real properties, and failed to disclose his interest in the assets purportedly held by Daniel Roy Hafen, Ltd. The Investors allege Daniel Roy Hafen, Ltd. transferred title to two properties in Pinto Valley, Utah, to the C.A.R. Trust on November 5, 2009.[8] Additionally, the Complaint states Daniel Roy Hafen, Ltd. owns 7.22 acres in Pinto Valley, Utah, used predominantly by the Debtor. Finally, the Complaint asserts Daniel Roy Hafen, Ltd. has right to thirteen hours of irrigation per year from Pinto Creek used to irrigate Pinto Valley property held in the C.A.R. Trust for the benefit of the Debtor and

---

[7] The Investors reference the transfers of 1501 Chapel Street, Santa Clara, Utah and 3075 Santa Clara Drive, Santa Clara, Utah from ACOM, LLC to Elwin Prince, both of which occurred on December 20, 2002.

[8] The properties consisted of 16.01 and 9.05 acres.

6

his wife. The Complaint alleges the Debtor did not disclose his interests in either Daniel Roy Hafen, Ltd., the properties, or water rights in his bankruptcy schedules.

Although the Investors seek judgment against the entities that now hold property for the benefit of the Debtor, the Complaint contains claims against the Debtor seeking to establish his liability for the debts and trace property fraudulently transferred. The first cause of action alleges the Debtor fraudulently concealed his interest in ACOM, LLC and Daniel Roy Hafen, Ltd. and transferred assets to avoid satisfaction of the Investors' claims. Similarly, claims two through seven assert liability against the Debtor for fraudulent misrepresentation, unlawful sale of unregistered securities, securities fraud, breach of fiduciary duty, and negligent misrepresentation, which resulted in the debts owed to the Investors. The remaining claims for civil conspiracy, fraudulent transfer, declaratory judgment, alter ego,[9] unjust enrichment, and imposition of a constructive trust name other defendants, including the Debtor's wife, his brother-in-law, ACOM, LLC, Daniel Roy Hafen, Ltd., and the C.A.R. Trust. Ultimately, the Complaint asks the State Court to impose a constructive trust for the Investors' benefit consisting of the concealed or fraudulently transferred assets.

On December 28, 2018, the Debtor filed the *Motion for Sanctions for Violation of Discharge Order* alleging the Investors violated § 524(a)'s discharge injunction by filing the Complaint (the "Motion for Sanctions").[10] In the Motion for Sanctions, the Debtor

---

[9] The claim for alter ego asserts there is no distinction between the Debtor and ACOM, LLC, Daniel Roy Hafen, Ltd., and the C.A.R. Trust.

[10] Appellant's App. at 85.

7

alleged that the Investors lacked standing to file the Complaint, as the causes of action contained therein belonged to the bankruptcy estate.[11] The State Court proceedings were stayed pending the Bankruptcy Court's decision.

The Bankruptcy Court held an evidentiary hearing on the Motion for Sanctions on May 31, 2019.[12] The Debtor maintained his argument regarding the Investors' lack of standing, but admitted that the argument could have been brought before the State Court.[13] Counsel for the Investors agreed that the State Court could consider the issue of standing.[14] The chapter 7 trustee in the Debtor's reopened case did not respond to or appear at the hearing on the Motion for Sanctions.

The Bankruptcy Court took the matter under advisement and entered its *Order Denying Debtor's Motion for Sanctions for Violation of the Discharge Order*[15] and *Memorandum Decision on Debtor's Motion for Sanctions for Violation of the Discharge Order*[16] (the "Opinion") on June 6, 2019. On the issue of standing, the Bankruptcy Court made the following statement:

> A question was raised about the standing of the Creditors to pursue these claims in the state court proceeding. This Court does not decide whether or not the Creditors have standing to pursue these claims or whether the reappointed Chapter 7 Trustee would have standing. The parties have stated that the standing issues will be brought before the state court. To the Court's knowledge, the chapter 7 Trustee has not made an appearance in the Lawsuit.[17]

---

[11]     *Id.* at 95.
[12]     Appellant's App. at 457.
[13]     Appellant's App. at 466 – 467.
[14]     Appellant's App. at 471.
[15]     Appellant's App. at 273.
[16]     Appellant's App. at 262.
[17]     Appellant's App. at 265.

In denying the Motion for Sanctions, the Bankruptcy Court relied on the Investors'

repeated statements indicating they did not intend to collect from the Debtor personally,

instead identifying property in possession of other parties to be held liable. Accordingly,

the Bankruptcy Court concluded § 524(e)'s exception allowing recovery from non-debtor

entities applied.

The Debtor filed a timely *Motion to Alter or Amend Order Denying Debtor's

Motion for Sanctions*.[18] After conducting a hearing, the Bankruptcy Court entered the

*Order Denying Debtor's Motion to Alter or Amend Order Denying Debtor's Motion for

Sanctions* on August 15, 2019.[19] The Debtor filed a notice of appeal of the Bankruptcy

Court's order denying the Motion for Sanctions, the Opinion, and the order denying the

motion to alter or amend.[20]

## II.  Jurisdiction

"With the consent of the parties, this Court has jurisdiction to hear timely-filed

appeals from 'final judgments, orders, and decrees' of bankruptcy courts within the

[United States Court of Appeals for the] Tenth Circuit."[21] No party elected to have this

---

[18]     Appellant's App. at 275.
[19]     Appellant's App. at 298.
[20]     *Notice of Appeal and Statement of Election*, *in* Appellant's App. at 300.
[21]     *Straight v. Wyo. Dep't of Trans. (In re Straight)*, 248 B.R. 403, 409 (10th Cir.
BAP 2000) (first quoting 28 U.S.C. § 158(a)(1), and then citing 28 U.S.C. § 158(b)(1),
(c)(1) and Fed. R. Bankr. P. 8002).

appeal heard by the United States District Court for the District of Utah; thus, the parties have consented to our review.

"A decision is considered final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[22] The order and Opinion resolved the Motion for Sanctions, leaving nothing for the Bankruptcy Court to consider.[23] Therefore, the order and Opinion are final for purposes of 28 U.S.C. § 158. Furthermore, an order denying a motion to alter or amend pursuant to Federal Rule of Bankruptcy Procedure 9023 and Federal Rule of Civil Procedure 59 is final for purposes of appellate review if the underlying order from which relief is sought was also final.[24]

## III. Standard of Review

A bankruptcy court's interpretation of § 524 is a question of law reviewed *de novo*.[25] Likewise, "whether a creditor's actions violated the discharge injunction is also a question of law subject to de novo review."[26] Our review considers the threshold issue of

---

[22]     *In re Duncan*, 294 B.R. 339, 341 (10th Cir. BAP 2003) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996)).

[23]     *Bednar v. RCB Bank (In re Bednar)*, No. WO-18-099, 2019 WL 3928844, at *3(10th Cir. BAP Aug. 20, 2019) (unpublished) (concluding order denying sanctions for violation of discharge injunction is final for purposes of appellate review); *Williams v. Meyer (In re Williams)*, 438 B.R. 679, 683-84 (10th Cir. BAP 2010) (same).

[24]     *In re Boydstun*, No. WO-19-020, 2020 WL 241492, at *1 (10th Cir. BAP Jan. 16, 2020) (unpublished) (citing *Stubblefield v. Windsor Capital Grp.*, 74 F.3d 990, 993 (10th Cir. 1996)). All future references to "Bankruptcy Rule(s)" are to the Federal Rules of Bankruptcy Procedure. All future references to "Civil Rule(s)" are to the Federal Rules of Civil Procedure.

[25]     *In re Houlik*, 481 B.R. 661, 668 (10th Cir. BAP 2012) (citing *Culley v. Castleberry (In re Culley)*, 347 B.R. 115, 2006 WL 2091199, at *2 (10th Cir. BAP July 24, 2006) (unpublished)).

[26]     *Id.*

the Bankruptcy Court's jurisdiction, which we also review *de novo*.[27] "*De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision."[28]

We review the denial of a motion to alter or amend pursuant to Bankruptcy Rule 9023 and Civil Rule 59 for an abuse of discretion.[29] "Under the abuse of discretion standard 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"[30]

## IV. Discussion

The Complaint is an action to establish the Debtor's liability and recover property under two legal theories. First, the Investors attempt to avoid and recover fraudulent transfers of real property that ultimately ended up titled in a trust for the Debtor's benefit. Next, the Investors allege the Debtor failed to disclose in his bankruptcy schedules his interests in an entity that owned title to real property and water rights, and his own interests in those properties, and attempt to recover the undisclosed property as well. Below and on appeal, the Investors argue the State Court is the only court with proper

---

[27]    *Niemi v. Lasshofer*, 770 F.3d 1331, 1344 (10th Cir. 2014) (citing *Dahl v. Charles F. Dahl, M.D., P.C. Defined Benefit Pension Tr.*, 744 F.3d 623, 628 (10th Cir. 2014)).

[28]    *Peters v. Clark (In re Bryan)*, 857 F.3d 1078, 1091 (10th Cir. 2017) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991)).

[29]    *Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1275 (10th Cir. 2005) (citing *Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1287 (10th Cir. 2003)).

[30]    *In re Bryan*, 857 F.3d at 1091 (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)).

jurisdiction to consider their standing to bring the Complaint.[31] The Bankruptcy Court

declined to consider the issue of standing, leaving the State Court to determine the

Investors' standing to bring the claims.[32] As explained below, the Bankruptcy Court

erred by not deciding the issue of the Investor's standing.

### a. The Bankruptcy Court's Jurisdiction

The filing of a bankruptcy petition triggers the creation of a bankruptcy estate,

which is comprised of "all legal or equitable interests of the debtor in property as of the

commencement of the case."[33] A bankruptcy court's jurisdiction in bankruptcy cases is

derived from 28 U.S.C. § 1334, which grants the court jurisdiction over the bankruptcy

estate. Of specific interest here is 28 U.S.C. § 1334(e)(1):

> The district court in which a case is pending under title 11 is commenced or is
> pending shall have *exclusive* jurisdiction –
>
> > (1) of all the property, wherever located, of the debtor as of the
> > commencement of such case, and of property of the estate[.][34]

The United States Court of Appeals for the Tenth Circuit has ruled that "Congress

intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might

deal efficiently and expeditiously with all matters connected with the bankruptcy

estate."[35] For this reason, "[a] bankruptcy court has jurisdiction over disputes regarding

---

31      *Tr.* at 15, *in* Appellant's App. at 471; Appellee's Br. 22.
32      *In re Hafen*, 602 B.R. 764, 767 (Bankr. D. Utah 2019).
33      11 U.S.C. § 541(a)(1); *Sender v. Simon*, 84 F.3d 1299, 1304-05 (10th Cir. 1996).
34      28 U.S.C. § 1334(e)(1) (emphasis added).
35      *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)) (explaining 28 U.S.C. § 1334(b)'s "related to" jurisdiction is intentionally broad).

alleged property of the bankruptcy estate at the outset of the case."[36] The jurisdiction to determine what is property of the bankruptcy estate lies exclusively with the bankruptcy court.[37]

### i. Fraudulent Transfer Claims

In the Opinion, the Bankruptcy Court stated, "[a] question was raised about the standing of the [Investors] to pursue these claims in the state court proceeding. This Court does not decide [whether the Investors] have standing to pursue these claims or whether the reappointed Chapter 7 Trustee would have standing."[38] Yet, the issue of the Investors' standing to pursue fraudulent transfer claims arising from prepetition transfers is totally dependent upon and inescapably intertwined with the issue of whether such claims contained in the Complaint constitute property of the bankruptcy estate, an issue over which the Bankruptcy Court has exclusive jurisdiction. Put another way, if fraudulent transfer claims arising from prepetition transfers are property of the estate, then only the chapter 7 trustee has standing to pursue those claims. Therefore, the Investors' standing to pursue the fraudulent transfer claims depends on whether those claims belong to the bankruptcy estate.[39] The Bankruptcy Court is the only court with

---

[36] *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir. 1990) (citing *In re Xonics, Inc.*, 813 F.2d 217, 131 (7th Cir. 1987)) (per curiam).
[37] *Montoya v. Curtis (In re Cashco, Inc.)*, 614 B.R. 715, 722 (Bankr. D.N.M. 2020) (citing *Rare, LLC v. Marciano (In re Rare, LLC)*, 298 B.R. 762, 764 (Bankr. D. Colo. 2003) ("[I]t lies within the exclusive province of the bankruptcy courts to determine what interests are part of the estate.") (citations omitted) and *Manges v. Atlas (In re Duval Cty. Ranch Co.)*, 167 B.R. 848, 849 (Bankr. S.D. Tex. 1994)).
[38] *In re Hafen*, 602 B.R. 764, 767 (Bankr. D. Utah 2019).
[39] *See Hall v. Walter (In re Hall)*, 139 F.3d 911, 1998 WL 77746, at *3 (10th Cir. Feb. 24, 1998) (unpublished) (holding creditor did not have standing to pursue fraudulent

13

subject matter jurisdiction to determine whether those claims are property of the bankruptcy estate. It did not have the discretion to defer ruling on the standing issue to the State Court. Accordingly, the Bankruptcy Court erred when it failed to determine whether the fraudulent transfer claims belong to the bankruptcy estate and left the question of standing to the State Court.[40]

## ii. Undisclosed Property Claims

The Bankruptcy Court's decision to allow the State Court to address the Investors' standing is equally problematic when considering the claims against property purportedly omitted from the Debtor's bankruptcy schedules. A debtor who seeks relief under the Bankruptcy Code is required to disclose every property interest known as of the petition date.[41] The omission of a property interest from a debtor's bankruptcy schedules does not

---

transfers as the right to bring such claims is reserved for the trustee or debtor-in-possession).

[40] Although this Court makes no determination on the issue of whether the claims at issue belong to the Debtor's bankruptcy estate, several opinions from the United States Court of Appeals for the Tenth Circuit support the conclusion that claims for fraudulent transfers belong to the bankruptcy estate unless assigned by a trustee. *Rajala v. Gardner*, 709 F.3d 1031, 1039 (10th Cir. 2013) (stating both parties agreed fraudulent transfer claims at issue belonged to the bankruptcy estate without deciding the issue); *see also Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1197-98 (10th Cir. 2002) (holding claims for preference actions under § 547(a), which uses language nearly identical to § 548(a), belonged to bankruptcy estate).

[41] *See In re Ford*, 492 F.3d 1148, 1155, n.8 (10th Cir. 2007) (quoting *In re Robinson*, 292 B.R. 599, 607 (Bankr. S.D. Ohio 2003) ("[D]ebtors have the absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the bankruptcy estate. This is because the bankruptcy court, not the debtor, decides what property is exempt from the bankruptcy estate.")).

prevent property from becoming part of the estate.[42] Once property becomes part of the

estate, it remains such unless abandoned pursuant to § 554 or otherwise administered.[43]

Further, unless the court orders otherwise, the closing of the bankruptcy case does not

result in the abandonment of estate property not scheduled under § 521(a)(1).[44]

The Investors allege that on the petition date, the Debtor not only owned an

interest in Daniel Roy Hafen, Ltd. but that the assets of Daniel Roy Hafen, Ltd. actually

belonged to the Debtor. Daniel Roy Hafen, Ltd. allegedly owned real property and water

rights on the petition date. The Investors assert the Debtor failed to disclose his interest in

Daniel Roy Hafen, Ltd. and its assets in his bankruptcy schedules.[45] To the extent the

Investors seek to recover the undisclosed property, and the property belongs to the estate,

only the chapter 7 trustee may seek turnover of such property.[46] Accordingly, any

analysis of the Investors' standing necessitates determining whether the undisclosed

property belongs to the bankruptcy estate. As that determination concerns the estate and

disputes over property belonging to the estate, a matter over which the Bankruptcy Court

---

[42]     *See In re Munoz*, 610 B.R. 907, 914 (Bankr. D.N.M. 2019) (holding an interest in an executory contract became property of the bankruptcy estate, "omission notwithstanding").

[43]     *Smith v. United Parcel Serv.*, 578 F. App'x 755, 759 (10th Cir. 2014) (quoting *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004)) (unpublished) ("Failure to list an interest in a bankruptcy schedule leaves that interest in the bankruptcy estate.").

[44]     See 11 U.S.C. § 554(c).

[45]     The Complaint alleges the Debtor owns "25% or 33 1/3% of Daniel Roy Hafen, Ltd." Complaint at 13, *in* Appellant's App. at 113. It is unclear to this Court the extent of property interest the Debtor held in Daniel Roy Hafen, Ltd.'s real property and water rights on the petition date.

[46]     11 U.S.C. § 542(a) ("an entity . . . in possession, custody, or control . . of property that the trustee may use, sell, or lease . . . shall deliver to the trustee . . . such property.").

has exclusive jurisdiction, the Bankruptcy Court erred in ceding the standing issue to the State Court.

### b. Violation of the Discharge Injunction

The Debtor asks this Court to reverse the Bankruptcy Court's holding that the Investors did not violate the discharge injunction because the Investor's Complaint seeks to establish the Debtor's liability to enable them to recover from other entities, and therefore falls with the exception to the discharge injunction contained in § 524(e). Subsection 524(e) provides that the "discharge of debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."[47] The Tenth Circuit has explained that subsection (e) "permits a creditor to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when . . . establishment of that liability is a prerequisite to recovery from another entity."[48]

Prepetition, the Investors held unsecured claims against the Debtor. They conducted no business with ACOM, LLC; Daniel Roy Hafen, Ltd., Cindy Hafen, Elwin F. Prince, or the C.A.R. Trust, whom they named as codefendants along with the Debtor in the Complaint. The Investors seek to collect by asserting prepetition fraudulent transfers by ACOM, LLC, from the assets Daniel Roy Hafen, Ltd. held on the petition

---

[47]    11 U.S.C. § 524(e).

[48]    *In re Walker*, 927 F.2d 1138, 1142 (10th Cir. 1991) (citing *Landsing Diversified Props.-II v. First Nat'l Bank & Tr. Co. of Tulsa (In re W. Real Estate Fund, Inc.)*, 922 F.2d 592, 598 (10th Cir. 1990)). *Accord In re Robben*, 562 B.R. 469, 479-80 (Bankr. D. Kan. 2017).

16

date, and from Cindy Hafen, Elwin F. Prince, and the C.A.R. Trust as pre- or post-petition immediate or mediate transferees of ACOM, LLC or Daniel Roy Hafen, Ltd.

Because the Investors had no business dealings with ACOM, LLC or Daniel Roy Hafen, Ltd. or their transferees, to reach their assets and to assert prepetition fraudulent transfer claims, the Investors allege there is "a unity of interest and ownership" among the Debtor, ACOM, LLC, Daniel Roy Hafen, Ltd, Cindy Hafen, Elwin F. Prince, and the C.A.R. Trust, such that "the separate personalities of the entities and individual no longer exist."[49] To the extent this is true, the claims and assets at issue may be property of the bankruptcy estate, the Investors may not have standing in the State Court lawsuit, and the § 524(e) safe harbor applicable to claims against entities separate from the Debtor may not apply. Accordingly, absent a record determining whether the claims and assets at issue constitute property of the bankruptcy estate, we cannot review the Bankruptcy Court's decision to apply § 524(e).

## V.    Conclusion

When the matter involves the bankruptcy estate, a bankruptcy court's jurisdiction is exclusive to accomplish one of the primary goals of the Bankruptcy Code—the equitable administration of claims. The record on appeal is insufficient for this Court to determine whether the Complaint alleges causes of action belonging to the bankruptcy estate. Accordingly, because the record does not include findings of fact and conclusions

---

[49]    State Court Complaint, Eleventh Claim for Relief, Appellant's App. at 385-387. The Investors also allege that [o]bservance of the corporate form would sanction a fraud, promote injustice, and result in inequities against Plaintiffs." *Id.*

17

of law on whether the Investors' claims involve property of the estate, we REVERSE and REMAND so that the Bankruptcy Court may determine whether the causes of action set out in the Complaint are property of the bankruptcy estate, and, after making that determination, determine whether the Investors had standing to bring those claims.[50]

---

[50] Because we reverse and remand, we need not consider whether the Bankruptcy Court erred in denying the Debtor's *Motion to Alter or Amend Order Denying Debtor's Motion for Sanctions.* The Bankruptcy Court is free to consider that issue anew once it determines the issues related to standing.

**SOMERS**, Bankruptcy Judge, concurring:

I concur in the decision that this case should remanded to the Bankruptcy Court for further findings. As to the approach to be taken upon remand, I would rule that, rather than considering the Complaint as a whole as did the Bankruptcy Court when denying the Debtor's motion for sanctions, the Bankruptcy Court should examine each claim (count of the Complaint) against the Debtor on a claim by claim basis to determine which, if any, of the claims violate the § 524(a)(2) discharge injunction or come within the § 524(e) exception to the injunction. This is the methodology taken in *Robben*,[1] which was cited by the Bankruptcy Court.

In *Robben*, the Bartlett parties, who prepetition at the behest of debtor Robben had invested in a failed real estate development, objected to discharge of their claims against debtor under §§ 523(a)(2)(A), (a)(4), (a)(6), and (a)(19). They moved to modify the discharge injunction to permit them to pursue a 32 count complaint against debtor Robben in federal district court to a conclusion. The counts included some claims likely to be excepted from discharge, such as fraud, and others clearly subject to discharge, such as negligence when acting as a real estate broker and breach of contract. The court granted modification of the §524(a)(2) discharge injunction, but only as to those counts having elements that were the same as the elements of one or more of the exceptions to discharge.

---

[1] *In re Robben*, 562 B.R. 469 (Bankr. D Kan. 2017).

To support broader relief, the Bartlett parties argued that they should be permitted based upon § 524(e) to proceed against Debtor on many discharged claims included in counts which were clearly outside the exceptions to discharge because third parties might be liable on any judgments entered against debtor on those counts. In the Tenth Circuit, as announced in *Walker*, § 524(e) "permits a creditor to bring or continue an action directly against a debtor for the purpose of establishing the debtor's liability when . . . establishment of that liability is a prerequisite to recovery from another entity."[2] To apply this test in Robben, each claim alleged to be within the exemption was considered, but each fell short because the third parties who might be liable were not identified and the basis for third-party liability was not alleged in the complaint. Therefore, the court was not provided a basis for the application of the *Walker* prerequisite test to each of the counts alleged to be within the exception and relief was denied for this reason. The *Walker* prerequisite test was not applied; there was no determination of whether the assertion of one or more counts against Robben was necessary for recovery from third parties. *Robben* does not stand for the proposition that litigation is allowed against a discharged debtor when there are sound legal theories for collection from a third party; the *Walker* test must be satisfied before a claim against a discharged debtor is removed from the broad injunction of § 524(a)(2) by the exception of § 524(e).

In accord with the methodology of *Robben*, I would rule that upon the remand when deciding if Debtor's motion for sanctions should be granted, the Bankruptcy Court

---

[2]     *In re Walker*, 927 F.2d 1138, 1142 (10th Cir. 1991).

should examine each claim of the Complaint asserted against the Debtor and determine if it is within the scope of the § 524(a)(2) injunction and whether the § 524(e) exception applies. This will require consideration of the jurisdictional issues addressed above, as well as other relevant issues.